IN THE UNITED STATES COURT OF FEDERAL CLAIMS

20-518
(Judge Marian Blank Horn)

PORTLAND MINT,
Plaintiff,

v.

UNITED STATES,
Defendant.

DEFENDANT'S MOTION TO DISMISS

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

DEBORAH A. BYNUM
Assistant Director

ERIC SINGLEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0972
eric.j.singley@usdoj.gov

September 25, 2020                    Attorneys for Defendant

## TABLE OF CONTENTS

STATEMENT OF FACTS ............................................................................................ 2

    I.      Background On U.S. Mint Mutilated Coin Redemption Program ....................... 2

    II.    Portland's Attempt To Redeem Mutilated Coins ................................................ 2

ARGUMENT ........................................................................................................... 3

    I.      Standards Of Review ....................................................................................... 3

    II.    The Allegations Concerning Offer And Acceptance And Intent To
           Contract Are Insufficient To Demonstrate The Formation Of A
           Contract .......................................................................................................... 5

    III.    Even If The Complaint Pleads A Contract, It Fails To Identify
           Substantive Provisions Of The Alleged Contract ................................................ 8

    IV.    Even Assuming The Complaint Sets Forth The Terms Of The Alleged
           Contract, It Lacks Specific Allegations Concerning The Authority Of
           A U.S. Mint Employee Or Agent To Enter Into The Contract............................ 9

    V.     Portland Fails To Sufficiently Allege Its Cause Of Action For Breach
           Of Implied Duty Of Good Faith And Fair Dealing .............................................10

    VI.    Portland's Request For Declaratory Relief Should Be Dismissed ......................11

    VII.   The Court Lacks Jurisdiction To Entertain Plaintiff's Cause Of
           Action For Equitable Estoppel ..........................................................................12

    VIII.  This Court Lacks Jurisdiction Over Plaintiff's Unjust Enrichment
           Claim ..............................................................................................................14

    IX.    This Court Lacks Jurisdiction Over Plaintiff's Fifth Amendment
           Takings Claim..................................................................................................14

CONCLUSION........................................................................................................19

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Acadia Tech., Inc. v. United States*,
   458 F.3d 1327 (Fed. Cir. 2006)................................................................................ 14, 15

*Acceptance Ins. Companies, Inc. v. United States*,
   503 F.3d 1328 (Fed. Cir. 2007)......................................................................................4

*Allegre Villa v. United States*,
   60 Fed. Cl. 11 (2004)....................................................................................................17

*Am. Fed. Bank, FSB v. United States*,
   62 Fed. Cl. 185 (2004)....................................................................................................6

*Anderson v. United States*,
   344 F.3d 1343 (Fed. Cir. 2003).......................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................5

*Bennis v. Michigan*,
   516 U.S. 442 (1996) ......................................................................................................18

*Blazavich v. United States*,
   29 Fed. Cl. 371 (1993).....................................................................................................4

*Boggs v. Merletti*,
   987 F. Supp. 1 (D.D.C. 1997) .......................................................................................18

*Centex Corp. v. United States*,
   395 F.3d 1283 (Fed. Cir. 2005)......................................................................................10

*Crocker v. United States*,
   37 Fed. Cl. 191 (1997)...................................................................................................15

*Del-Rio Drilling Programs v. United States*,
   146 F.3d 1358 (Fed. Cir. 1998).....................................................................................15

*Doe v. United States,*
    95 Fed. Cl. 546 (2010) ................................................................................8

*Estate of Bogley v. United States,*
    514 F.2d 1027 (Ct. Cl. 1975) ....................................................................6

*Fisher v. United States,*
    402 F.3d 1167 (Fed. Cir. 2005) .................................................................4

*Florida Rock Indus., Inc. v. United States,*
    791 F.2d 893 (Fed. Cir. 1986) .................................................................15

*Franconia Assoc. v. United States,*
    61 Fed. Cl. 718 (2004) ............................................................................17

*Garreaux* v. *United States,*
    77 Fed. Cl. 726 (2007) ..............................................................................8

*Girling Health Sys., Inc. v. United States,*
    22 Cl. Ct. 66 (1990) ..................................................................................8

*Gonzalez-McCaulley Investment Group, Inc. v. United States,*
    93 Fed. Cl. 710 (2010) ...........................................................................3, 8

*Gould v. United States,*
    67 F.3d 925 (Fed. Cir. 1995) .....................................................................3

*Hall v. United States,*
    74 Fed. Cl. 391 (2006) ..............................................................................4

*Harbert/Lummus Agrifuels Project v. United States,*
    142 F.3d 1429 (Fed. Cir. 1998) .................................................................9

*Henke v. United States,*
    60 F.3d 795 (Fed. Cir. 1995) .....................................................................4

*Hercules, Inc. v. United States,*
    516 U.S. 417 (1996) ..............................................................................3, 14

*Holley v. United States,*
    124 F .3d 1462 (Fed. Cir. 1997) ................................................................4

*Hydrothermal Energy Corp. v. United States*,
26 Cl. Ct. 7 (1992) ........................................................................................11

*Ingham Regional Medical Center* v. *United States*,
126 Fed. Cl. 1 (2016) .......................................................................................4

*Kam-Almaz v. United States*,
682 F.3d 1364 (Fed. Cir. 2012) ...............................................................14, 15

*Knight v. United States*,
52 Fed. Cl. 243 (2002) .....................................................................................4

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949) .......................................................................................16

*Lion Raisins, Inc. v. United States*,
416 F.3d 1356 (Fed. Cir. 2005) ......................................................................16

*Lumbermens Mut. Cas. Co. v. United States*,
654 F.3d 1305 (Fed. Cir. 2011) ......................................................................14

*M & J Coal Co. v. United States*,
47 F.3d 1148 (Fed. Cir. 1995) ........................................................................15

*Maniere v. United States*,
31 Fed. Cl. 410 (1994) .....................................................................................4

*Marquardt Co. v. United States*,
101 Fed. Cl. 265 (2011) .................................................................................11

*Martinez v. United States*,
Nos. 10-569C, 10-703C, 2011 WL 1346941, *2 (Fed. Cl. April 8, 2077) ...............5

*Massie v. United States*,
226 F.3d 1318 (Fed. Cir. 2000) ......................................................................11

*Meschkow v. United States*,
109 Fed. Cl. 637 (2013) .................................................................................15

*Modern Sys Tech. Corp. v. United States*,
979 F.2d 200 (Fed. Cir. 1992) .........................................................................9

*Pauley Petroleum, Inc. v. United States,*
    591 F.2d 1308 (1979) ........................................................................................11

*Reynolds v. Army and Air Force Exch. Serv.,*
    846 F.2d 746 (Fed. Cir. 1988) .............................................................................4

*Rogers v. United States,*
    95 Fed. Cl. 513 (2010) .........................................................................................3

*Schrader v. United States,*
    103 Fed. Cl. 92 (2012) .......................................................................................15

*Scott Timber Co. v. United States,*
    692 F.3d 1365 (Fed. Cir. 2012) .........................................................................10

*St. Christopher Associates v. United States,*
    511 F.3d 1376 (2008) ...................................................................................16, 17

*Sun Oil Company v. United States,*
    572 F.2d 786 (1978) .....................................................................................17, 18

*Tabb Lakes, Ltd. v. United States,*
    10 F.3d 796 (Fed. Cir. 1993) .............................................................................15

*Terran v. Secretary of Health and Human Servs.,*
    195 F.3d 1302 (Fed.Cir.1999) ...........................................................................11

*Trauma Serv. Group v. United States,*
    104 F.3d 1321 (Fed. Cir. 1997) ......................................................................3, 9

*United Pac. Ins. Co. v. Roche,*
    401 F.3d 1362 (Fed. Cir. 2005) ...........................................................................9

*United States v. Simmons,*
    No. CV F 96-5948 AWISWS, 2000 WL 33138083 (E.D. Cal. Dec. 14, 2000) ......13

*United States v. Winstar Corp.,*
    518 U.S. 839 (1996) ...........................................................................................16

*XP Vehicles, Inc. v. United States,*
    121 Fed. Cl. 770 (2015) .......................................................................................6

## Statutes

18 U.S.C. § 492..............................................................................................................13

28 U.S.C. § 1491(a)(1) (1994).........................................................................................11

28 U.S.C. § 1491(a)(l)..............................................................................................3, 14

31 U.S.C. § 5120...............................................................................................................2

## Regulations

31 C.F.R. part 100.............................................................................................................2

31 C.F.R. § 100.11(a)-(b)..................................................................................................2

31 C.F.R. § 100.11(c)(6)(i)................................................................................................2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| THE PORTLAND MINT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 20-518C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(l) and 12(b)(6) of the Rules of the United States Court Federal Claims, defendant, the United States, respectfully requests the Court dismiss the complaint filed by plaintiff, The Portland Mint (Portland). Although Portland alleges that it formed a contract with officials of the United States Mint (U.S. Mint) to redeem mutilated coins, the allegations in the complaint do not establish offer and acceptance, intent to contract, or authority to contract. Further, even assuming the complaint plausibly alleges a contract, it fails to specify, other than in conclusory terms, the terms of the alleged contract.  Additionally, Portland fails to sufficiently allege facts to support its implied duty of good faith and fair dealings and equitable estoppel claims.  Finally, Portland's unjust enrichment and Fifth Amendment Takings claims are outside the Court's Tucker Act jurisdiction.  As we demonstrate below, Portland's  complaint should be dismissed.

In support of this motion, we rely upon the complaint and the following brief.

## DEFENDANT'S BRIEF

## STATEMENT OF FACTS

**I.    Background On U.S. Mint Mutilated Coin Redemption Program**

The U.S. Mint, a bureau of the Department of the Treasury, is the sole manufacturer of

legal tender coinage for the United States and is responsible for producing and circulating

coinage for the nation to conduct its trade and commerce.  The U.S. Mint's Mutilated Coin

Redemption Program (Program) is a public service that the U.S. Mint offers under the authority

of Department of the Treasury regulations appearing at 31 C.F.R. part 100, subpart C,

promulgated under 31 U.S.C. § 5120, to facilitate commerce by allowing individuals and entities

to exchange bent or partial coins for their cash equivalency.  While the Program is not mandatory

under 31 U.S.C. § 5120, it has a long precedent (over 100 years).  The Program accepts lawfully

held bent or partial coins, which are readily and clearly identifiable as to genuineness and

denomination. *See* 31 C.F.R. § 100.11(a) - (b).  Under the Program, no redemption will be made

when a submission, or any portion of a submission, demonstrates a pattern of intentional

mutilation or an attempt to defraud the United States or a submission appears to be part of, or

intended to further, any criminal activity.  *See* 31 C.F.R. § 100.11(c)(6)(i) & (ii).

**II.    Portland's Attempt To Redeem Mutilated Coins**

According to the complaint, in January 2018, the Program manager invited Portland to

submit an application. *See* Compl. ¶ 44.  Portland then submitted a written application to the U.S.

Mint to participate in the Program. *Id.* at ¶ 45.  Afterwards, Portland received a deficiency

notification letter from the U.S. Mint identifying certain deficiencies in Portland's application.

*Id.* at ¶ 46.  Sometime after Portland responded to the deficiency notice, the U.S. Mint then

scheduled Portland to deliver its coins on August 1 and 2, 2018, at the Olin Brass foundry in

Illinois to redeem a total of 425,100 pounds of dimes, quarters, and half-dollars, and 1,819

2

pounds of nickels.  *Id*. at ¶¶ 47, 52-3.  Portland alleges that following the delivery of the coins to Olin Brass, two U.S. Mint employees stated that Portland's coins were without issue and supposedly promised payment within 4-6 weeks.  *Id*. at ¶ 56.  In the months following the delivery of the coins to Olin Brass, the U.S. Mint informed Portland that preliminary testing of the materials submitted by Portland identified technical anomalies that required additional, detailed testing to ensure the coins were appropriate for redemption. *Id*. at ¶ 61.  Portland has not been paid for the coins delivered on August 1 and 2, 2018. *Id*. at ¶ 58.  Portland seeks $8.51 million for the coins it delivered in August 2018. *Id*. at ¶ 113(b).

## ARGUMENT

### I.     Standards Of Review

"The Tucker Act supplies the Court of Federal Claims with jurisdiction for claims against the United States founded upon the Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997); 28 U.S.C. § 1491(a)(l); *Gould v. United States*, 67 F.3d 925. 928 (Fed. Cir. 1995).  "The party invoking jurisdiction has the burden to show compliance with the Tucker Act." *Id*.; see *Rogers v. United States*, 95 Fed. Cl. 513,515 (2010) ("Plaintiffs bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence before the Court proceeds to the merits of the action" (citation omitted)).  "If jurisdiction is found to be lacking, the court must dismiss the action." *Gonzalez-McCaulley Investment Grp., Inc. v. United States*, 93 Fed. Cl. 710, 713 (2010); RCFC 12(h)(3).  Where Tucker Act jurisdiction is based on a contract theory, as is Portland's  complaint , jurisdiction "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules, Inc. v. United States*, 516 U.S. 417,423 (1996).

"When analyzing jurisdiction, the court starts with the complaint, 'which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim.'" *Gonzalez-McCaulley*, 93 Fed. Cl. at 713(quoting *Holley v. United States*, 124 F .3d 1462, 1465 (Fed. Cir. 1997)).  "A challenge to the Court of Federal Claims' jurisdiction may be overcome on the basis of a well-pleaded allegations in the complaint." *Acceptance Ins. Cos., Inc.* v. *United States,* 503 F.3d 1328, 1334 (Fed. Cir. 2007); *see also Fisher* v. *United States,* 402 F.3d 1167, 1175 (Fed. Cir. 2005).

When deciding a motion to dismiss under RCFC 12(b)(l), the Court "assume[s] all factual allegations [in the complaint] to be true and draw[s] all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995) (citation omitted); *see also Hall v. United States,* 74 Fed. Cl. 391, 393 (2006).  However, if the moving party challenges the factual allegations concerning jurisdiction, the court must resolve the allegations before turning to the merits.  *See, e.g., Knight v. United States,* 52 Fed. Cl. 243, 246-4 (2002), *aff'd in part, revs'd in part, and remanded,* 65 Fed. Appx 286, 2003 WL 2008075 (Fed. Cir. 2003); *Maniere v. United States,* 31 Fed. Cl. 410, 413-15 (1994).  The Court is not required to accept the factual allegations in the complaint at face value. To the contrary, "[i]f the motion to dismiss is for lack of jurisdiction . . . and [the moving party] 'challenges the truth of the jurisdictional facts alleged in the complaint . . . the . . . court may consider relevant evidence in order to resolve the factual dispute.'" *Blazavich v. United States,* 29 Fed. Cl. 371, 373 (1993) (quoting *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir. 1988)).

With respect to Rule 12(b)(6), while a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ingham Regional Med. Ctr.* v. *United States,* 126 Fed. Cl. 1, 19 (2016), *aff'd in part, rev'd in part*, 874 F.3d 1341

(Fed. Cir. 2017) ("[f]actual allegations must be enough to raise a right to relief above the speculative level."); *see also Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555-56 (2007)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (to avoid dismissal, a complaint must "'state a claim to relief that is plausible on its face'"), *(quoting Twombly* 550 U.S. at 570)).

"[D]etermining whether a complaint states a plausible claim will . . . be a context–specific task." *Iqbal,* 129 S.Ct. at 1950.  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but not 'show[n]' - that the pleader is entitled to relief."  Id. (quoting Fed.R.Civ.P. 8(a)(2)). "[O]nce the court excises any conclusory or formulaic components of a plaintiff's complaint, the court must determine whether the remaining factual allegations in the complaint 'plausibly suggest an entitlement to relief.'"  *Martinez v. United States*, Nos. 10-569C, 10-730C, 2011 WL 1346941, *2 (Fed. Cl. April 8, 2011), (quoting *Iqbal*, 556 U.S. at 681).

## II.   The Allegations Concerning Offer And Acceptance And Intent To Contract Are Insufficient To Demonstrate The Formation Of A Contract

Portland has not sufficiently alleged facts to show that the U.S. Mint unambiguously offered to enter into a contract with Portland.  In the complaint, Portland alleges that the U.S. Mint invited Portland to apply to the Program. Compl. ¶ 78.  . Portland describes this "invitation"  as an e-mail dated January 9, 2018, in which Timothy Grimsby, the former Mutilated Coin Redemption Manager and current chief of the Accounting Division, alerted Portland that the Program had resumed and invited Portland  to submit an application to again participate in the Program. Compl. ¶ 44.[1]

---

[1]    The U.S. Mint believes the email Portland refers to does not actually say what Portland purports it does (and was actually sent to a third party, not Portland), but for purposes of a motion to dismiss, we will analyze only the allegations stated in the complaint.

This court has long held that mere solicitations, invitations, or instructions from the government are not offers to contract that can bind the government.  *See XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 785 (2015) (citing *Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 71-72 (1990)); *see also Estate of Bogley. United States*, 514 F.2d 1027, 1032 (Ct. Cl. 1975) (explaining that an offer to contract with the government must amount to more than a mere expression of intent or general willingness to do something).  As the Federal Circuit has noted: "a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer."  *Estate of Bogley v. United States*, 514 F.2d 1027, 1032 (Fed. Cir. 1975) (citation omitted).  Instead, "an offer is made by the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Anderson v. United States,* 344 F.3d 1343, 1353 (Fed. Cir. 2003) (citation omitted).

In this case, all that is alleged is that Mr. Grimsby let Portland know that the Program had resumed and "*invited the Portland Mint to submit an application* to again participate in the Program" (emphasis added). *See* Compl. ¶ 44.  Notably, this statement does not contain a promise from the U.S. Mint. Nor does the statement request that Portland provide mutilated coins.  The alleged statement suggests no more than a general willingness to review an application.   Given this, Portland cannot reasonably rely upon Mr. Grimsby's alleged statement to show that the U.S. Mint extended an offer to enter into the contract alleged in this case.

The complaint similarly fails to sufficiently allege acceptance of any offer from the U.S. Mint to form the contract alleged in this case.  This court has recognized that the conduct of an offeree can constitute acceptance of an offer to contract. *See Am. Fed. Bank, FSB v. United States*, 62 Fed. Cl. 185, 198 (2004).  But, the offeror must reasonably understand this conduct to

be an acceptance of an offer to contract in order to form the contract.  *Id.*  Whether an offeree's conduct "constitutes an acceptance will depend upon whether the offeror reasonably understands it to be an acceptance and whether it reasonably appears to conclude a contract or whether it leaves matters yet to be concluded."  *Williston on Contracts* § 6.10, at 71.

It is unclear from the complaint if Portland is alleging it accepted Mr. Grimsby's "offer" by applying for the program, or if the alleged acceptance is the scheduling of coins for delivery to Olin Brass on August 1 and 2, 2018.  *See* Compl. ¶¶ 78-79.  In either scenario, matters were yet to be concluded.  The application is essentially an initial step that gives an individual or business the opportunity to participate in the Program.  Coin deliveries still need to be scheduled, quantities of coin shipments determined, and coins themselves evaluated to determine if they are eligible for redemption.  Portland's suggestion that by sending in its application, it was accepting a contractual offer from the U.S. Mint is inaccurate and holds no weight.  Even after Portland's application to participate in the Program was accepted, no contract was formed. Portland was under no obligation to deliver coins to the U.S. Mint and the U.S. Mint was under no obligation to redeem coins from Portland.

As to scheduling the coins for delivery, the complaint alleges that Anthony Holmes, a Material Handler Supervisor at the U.S. Mint, informed Portland that its application to participate in the Program was approved, and asked the Portland "Are your coins ready for shipment?" and "How many trucks will you have ready for the melt?"  Compl. ¶¶ 50-51. Portland has not alleged sufficient facts to show that Mr. Holmes reasonably understood Portland's statements to be an acceptance of an offer to contract.  In fact, it is clear from Mr. Holmes's questions that matters were yet to be concluded. Further, the U.S. Mint was under no obligation to accept the coins for redemption at this stage.

7

Because the allegations concerning offer and acceptance and intent to contract are insufficient to demonstrate the formation of a contract, Portland's contract claims must be dismissed.

### III.   Even If The Complaint Pleads A Contract, It Fails To Identify Substantive Provisions Of The Alleged Contract

In pleading a contract claim pursuant to the Tucker Act, a plaintiff must comply with RCFC 9(k) "which delineates a special pleading requirement for contract claims."  RCFC 9(k) provides:

> In pleading a claim founded on a contract or Treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies. In lieu of a description, the party may annex to the complaint a copy of the contract or treaty, indicating the relevant provisions.

As this Court has noted, "[t]he rationale for this burden plainly and simply is that, '[i]n order for the court to render a decision on a breach of contract claim, it must know the relevant terms of the contract.'"  *Gonzalez-McCaulley Investment Grp., Inc.* v. *United States,* 93 Fed. Cl. 710, 715 (2010) (quoting *Garreaux* v. *United States,* 77 Fed. Cl. 726, 730 (2007)).

Portland's  complaint, which asserts a contract claim against the U.S. Mint, fails to satisfy these requirements because it fails to identify the "substantive provisions of the contract."  There are no allegations that there were any discussions other than the submission of coins to the U.S. Mint for review, and Portland has not—and cannot—provide a copy of any contract or relevant contract provisions.

In short, even if the complaint otherwise pleads an implied-in-fact contract, the terms of the alleged contract are not stated with sufficient clarity to overcome the pleading hurdle of RCFC 9(k).  *Garreaux,* 77 Fed. Cl. at 730.  Therefore, the complaint should be dismissed.  *See, e.g., Doe v. United States,* 95 Fed. Cl. 546, 584-585 (2010) (a vague claim that the United States agreed to "compensate [p]laintiff for any inconvenience or damage he sustained in the

forthcoming military action "was insufficiently specific to support a contract claim); *United Pac.*

*Ins. Co. v. Roche,* 401 F.3d 1362, 1366 (Fed. Cir. 2005) ("'In the . . . sufficiently definite terms,

no contractual obligations arise,'" (quoting *Modern Sys Tech. Corp. v. United States,* 979 F.2d

200, 202 (Fed. Cir. 1992)).

### IV.   Even Assuming The Complaint Sets Forth The Terms Of The Alleged Contract, It Lacks Specific Allegations Concerning The Authority Of A U.S. Mint Employee Or Agent To Enter Into The Contract

Even if the allegations in the complaint are specific enough to establish the alleged

contract, they are not specific enough to establish that a U.S. Mint employee or agent had the

authority to bind the U.S. Mint to a contract. Thus, the complaint contains no substantive

allegations supporting its assumption that a U.S. Mint employee or agent had actual or implied

authority to bind the U.S. Mint. It is well-settled that:

> To succeed on a contract claim against the United States, it is not
> sufficient for plaintiff merely to assert that he entered into a
> contract with the United States.  Plaintiff must plead facts
> sufficient to allege that the Government agent had actual authority
> to bind the Government to a contract.  Plaintiff's subjective belief
> is irrelevant.

*Doe v. United States,* 95 Fed. Cl. at 546; (citing *Harbert/Lummus Agrifuels Project v. United*

*States,* 142 F.3d 1429, 1432 (Fed. Cir. 1998) ("[T]he government is not bound by the acts of its

agents beyond the scope of their actual authority")); *see also Trauma Serv. Grp.,* 104 F .3d at

1325 ("[A ]nyone entering into an agreement with the Government takes the risk of accurately

ascertaining the authority of the agents who purport to act for the Government, and this risk

remains with the contractor even when the Government agents themselves may have been

unaware of the limitations on their authority").

It is unclear from the complaint which U.S. Mint employee Portland is claiming had the

authority to legally bind the United States in contract.  Further, there are no allegations as to

what actual or implied authority that person had.  While the complaint mentions named U.S. Mint employees who told Portland that it could submit an application to participate in the program, and statements from an employee attempting to schedule a delivery, there are no allegations that these employees had the actual or implied authority to contractually bind the U.S. Mint. Given this, Portland  has failed to sufficiently plead a necessary element of its contract claims.

## V.      Portland  Fails To Sufficiently Allege Its Cause Of Action For Breach Of Implied Duty Of Good Faith And Fair Dealing

Portland fails to sufficiently allege its cause of action for breach of implied duty of good faith and fair dealing.  A cause of action based on the implied duty of good faith and fair dealing is simply a specific breach-of-contract claim.  *See Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) ("The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to its contracting partner.").  The duty of good faith and fair dealing is applicable in both private and government contracts, *id.*, and its existence "depends on the existence of an underlying contractual relationship."  *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) (internal quotation marks omitted).  Because the existence of the covenant of good faith and fair dealing depends on the existence of an underlying contractual relationship, there is no claim for a breach of this covenant where a valid contract has not yet been formed. *Id*.  As described above, Portland has failed to sufficiently allege an express or implied contract; therefore, because there is no underlying contract, this claim must be dismissed.

**VI.**   **Portland's Request For Declaratory Relief Should Be Dismissed**

The Court should also dismiss Portland's request for declaratory relief because, even if Portland  can establish that it entered into a valid contract with the Government, this Court will only have the authority to award money damages.  Under the Tucker Act, the Court of Federal Claims has authority to render judgment upon any claim "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1994). "The Supreme Court has interpreted this language to mean that a plaintiff who seeks redress in the Court of Federal Claims must present a claim for 'actual, presently due money damages from the United States.'" *Terran v. Secretary of Health and Human Servs.,* 195 F.3d 1302, 1309 (Fed. Cir. 1999).  "This Court may issue declaratory judgments or offer equitable relief only under an express grant of such jurisdiction in a federal statute." *Marquardt Co. v. United States*, 101 Fed. Cl. 265, 269 (2011) (internal quotations omitted).  This court lacks jurisdiction to award purely declaratory relief in breach of contract cases, but may "issue rulings of law declaring the rights of parties under a contract where such rulings are necessary to the resolution of a claim for money presently due and owing." *Hydrothermal Energy Corp. v. United States*, 26 Cl. Ct. 7, 16-17 (1992) (citing *Pauley Petroleum, Inc. v. United States,* 591 F.2d 1308, 1315 (1979) (en banc)).

Portland's complaint is particularly out of bounds in its request for "a declaration that the Mint accept for redemption any coins aggregated by the Portland Mint between August 2018 and the suspension of the program in April 2019 based on the Mint's acceptance of the Portland Mint into the Redemption Program."  This court has no authority to order specific performance or other equitable remedies.  *See Massie v. United States,* 226 F.3d 1318, 1321 (Fed. Cir. 2000)

11

(holding that a Court of Federal Claims trial court abused its discretion when it "fashioned a form of specific performance, equitable relief, which it had no authority to order."). Even if Portland can prove that the coins at issue in this case were genuine, which it cannot, there would be no basis for this Court to order the U.S. Mint to accept all of Portland's coins, genuine or not, based solely on the fact that it has been accepted into the redemption program.

If Portland has a claim at all, which we dispute, it will only be entitled to money damages.

## VII. The Court Lacks Jurisdiction To Entertain Portland's Cause Of Action for Equitable Estoppel

Plaintiff also fails to sufficiently allege an equitable estoppel claim. Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. *See Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 (1984). The courts may use this doctrine in appropriate cases to prevent a defendant from denying the existence of a contractual agreement. *See Emeco Indus., Inc. v. United States*, 485 F.2d 652, 657 (Fed. Cl. 1973). Equitable estoppel, however, cannot lie against the Government as it lies against private litigants. *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419 (1990).

In *Richmond*, the Supreme Court acknowledged that equitable estoppel claims traditionally do not succeed against the Government. *Id*. at 423. Additionally, the Court held that equitable estoppel cannot override the command of the Appropriations Clause to grant a money remedy that Congress has not authorized. *Id*. at 426. The Court concluded that estoppel against the Government by a claimant seeking public funds contrary to a statutory appropriation is barred by the Constitution, but an extreme circumstance could exist that might support estoppel against the Government in a case not involving payment from the Treasury. *Id*. at 434.

12

Specifically, in *Richmond*, a retired Navy employee appealed from a decision of the Merit Systems Protection Board ruling that he was ineligible for disability annuity payments during a period in which his income exceeded statutory level. The Court held that payments of money from the Federal treasury were limited to those authorized by statute, and erroneous advice given by a Government employee to a benefits claimant could not estop the government from denying benefits not otherwise permitted by law.

Here, Portland's  argument seems to be that, even if its coins were counterfeit or otherwise failed the regulatory requirements for acceptance, Portland is entitled to payment because two Mint employees allegedly told Portlandthat the coins were accepted. *See* Compl. ¶ 102. Similar to the *Richmond* case, Portland is not entitled to payments for its counterfeit coins because such payment would be contrary to law and regulation. *See* 18 U.S.C. § 492 (mandating that all counterfeit coins of the United States be forfeited to the United States); *United States v. Simmons*, 2000 WL 33138083, at *3 (E.D. Cal. Dec. 14, 2000) (coins deemed to be counterfeit are per se contraband, their mere possession is illegal, and they should not be returned to the holder); 31 C.F.R. § 100.11(c)(6)(i) (stating that no redemption will be made when a submission demonstrates an attempt to defraud the United States). Therefore, this claim is barred.

Alternatively, Portland may  argue that its equitable estoppel claim is instead based upon its alleged contract with the U.S. Mint to redeem coins. Equitable estoppel against the United States Government, however, can only lie when the Government agent whose actions were relied upon was acting within the scope of the agent's authority. *See McNabb v. United States*, 54 Fed.Cl. 759, 775 2002) (Horn, J.). As discussed above, Portland has not sufficiently alleged authority to contract, nor the existence of a contract at all. Therefore, Portland's estoppel claim must be dismissed.

13

**VIII.   This Court Lacks Jurisdiction Over Portland's Unjust Enrichment Claim**

Sovereign immunity bars Portland's unjust enrichment claim.  The United States is immune from so-called "quasi-contract" claims.  Quasi-contracts, also known as contracts "implied in law," "impose duties that are deemed to arise by operation of law, in order to prevent an injustice."  *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1316 (Fed. Cir. 2011) (citing *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996) (additional citations omitted)). They can be contrasted with implied in fact contracts, which "are 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties.'"  *Id.* (citations omitted).  The Government's waiver of sovereign immunity extends only to implied in fact contracts, and does not permit claims upon contracts implied in law.  *Id.*; 28 U.S.C. § 1491(a)(1) (Tucker Act waives sovereign immunity only as to claims based "upon any express or implied contract with the United States").  Because jurisdiction under the Tucker Act does not extend to contract claims that are implied in law, this count should be dismissed.

**IX.   This Court Lacks Jurisdiction Over Portland's Fifth Amendment Takings Claim**

In Count VII of the complaint, Portland alleges that the U.S. Mint's "permanent impairment" of its property constitutes a taking without just compensation in violation of the Fifth Amendment.  Portland claims that the U.S. Mint melted the Portland Mint's shipment and used it to manufacture new coin roll without providing the Portland Mint with anything of value for taking its property.

To the extent that Portland's assertion is that the Government's seizure was unauthorized, the district court, not the Court of Federal Claims, would possess jurisdiction.  *See Kam-Almaz v. United States*, 682 F.3d 1364, 1371 (Fed. Cir. 2012); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327 (Fed. Cir. 2006).  "[The] Tucker Act does not create jurisdiction in the Court of

Federal Claims for a party contesting the propriety of a seizure." *Acadia Tech., Inc,* 458 F.3d at

1331.  This Court may not entertain a collateral challenge to the validity of the Government's

actions.  *Schrader v. United States*, 103 Fed. Cl. 92, 98 (2012) (citing *M & J Coal Co. v. United

States*, 47 F.3d 1148, 1154 (Fed. Cir. 1995)).  "Because a takings claim is separate from a

challenge to the lawfulness of the government's conduct," *Acadia Tech.*, 458 F.3d at 1330,

complaints "about the wrongfulness of the [Government action] are therefore not properly

presented in the context of a takings claim," *id.* at 1331 (quoting *Rith Energy, Inc. v. United

States*, 270 F.3d 1347, 1352-53 (Fed. Cir. 2001))[2]

    The only way this court has jurisdiction over this takings claim is if Portland is not

disputing the propriety of the seizure itself, but rather seeks to challenge the alleged failure of the

Government to compensate Portland for a presumptively lawful seizure.  *See Kam-Almaz*, 682

F.3d at 1371; *see also Crocker v. United States*, 37 Fed. Cl. 191, 195-96 (1997) (citing *Florida

Rock Indus., Inc. v. United States*, 791 F.2d 893, 898 (Fed. Cir. 1986)); *see also Meschkow v.

United States*, 109 Fed. Cl. 637, 644 (2013) (citing *Tabb Lakes, Ltd. v. United States*, 10 F.3d

796, 802 (Fed. Cir. 1993)).

    Portland does not allege that the U.S. Mint's actions were authorized, but merely asserts

that the U.S. Mint refused to pay for coins that Plaintiff voluntarily submitted pursuant to the

redemption program, and that "as a direct, foreseeable, and proximate result of the acts of the

---

[2] For this reason, this Court has recognized that "[t]here is a critical distinction between
seeking redress for an alleged unauthorized government action, on the one hand, and just
compensation for a taking, on the other."  *Meschkow*, 109 Fed. Cl. at 644.  "The two actions
constitute 'two separate wrongs that give rise to two separate causes of action.'"  *Id.* (quoting
*Del-Rio Drilling Programs v. United States*, 146 F.3d 1358, 1364).  "[A] property owner is free
either to sue in district court for asserted improprieties committed in the course of the challenged
action or to sue for an uncompensated taking in the Court of Federal Claims."  *Id.*

U.S. Mint, the Portland Mint has been damaged in an amount equal to the just compensation due under the Fifth Amendment." Compl. ¶¶ 114-120.  Assertions like these do not form the basis for a claim under the Takings Clause of the Fifth Amendment, and therefore, Portland's takings claim must be dismissed.  *Acadia Tech. Co., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006) ("Because [plaintiff's] takings claim was premised on the allegations that the [government agency] violated the statute and regulations, the Court of Federal Claims properly dismissed the complaint.") (quoting *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1369 (Fed. Cir. 2005)); *see also Meschkow v. United States*, 109 Fed. Cl. 637, 644 (2013) ("[The] Tucker Act does not create jurisdiction in the Court of Federal Claims for a party contesting the propriety of" the taking) (quoting *Acadia*, 458 F.3d at 1331).

Moreover, Portland's entire complaint is based upon its alleged contractual right to payment.  But the parties to a contract possess a right to performance or to the payment of whatever damages are due under the law of contracts in the event of non-performance.  *See United States v. Winstar Corp.*, 518 U.S. 839, 868-71, 907-10 (1996) (contracting party is entitled to either performance or damages for non-performance).  As long as the contracting party receives one of those two possibilities, its rights under a contract have been fully satisfied and there can be no taking.  *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 703 n.27 (1949) (recognizing that, where there is a contract remedy, party cannot pursue a takings claim in the Court of Claims).

In *St. Christopher Assocs. v. United States*, the Federal Circuit explained that the contract defined the rights upon which the plaintiff sued, so it also defined the remedy:

> [The owner] established its rights with respect to increasing rents for
> the Apartments when it voluntarily entered into the Regulatory
> Agreement with HUD.  Hence, any claim that St. Christopher may

> have asserted should be a breach of contract claim, not a taking
> claim.

*St. Christopher Assocs v. United States,* 511 F.3d 1376, 1385 (2008).  The United States Court of Claims reached the same conclusion in its "seminal opinion" in *Sun Oil*.  *See Franconia Assoc. v. United States*, 61 Fed. Cl. 718, 738 (2004).  In *Sun Oil*, the plaintiffs, three oil companies, sought damages arising out of the Department of Interior's refusal to approve their application to install a drilling platform in accordance with their lease.  *Sun Oil Co. v. United States,* 572 F.2d 786, 793 (1978).  The Court adopted the trial judge's opinion that denial of one of the applications was a breach of the lease agreement.  *Id*. at 813.  Turning to the takings claim, the Court stated:

> Since plaintiffs would only be entitled to one recovery from the
> permit denial, it would seem that the taking claim is an alternative
> claim to the breach of lease contract claim.  Therefore, recovery on
> one claim theory would seem to preclude recovery on the other
> claim theory.

*Id*. at 817-18.  In *Allegre Villa v. United States*, 60 Fed. Cl. 11 (2004), the Court of Federal Claims similarly held that the takings claim could not stand:

> When a contract between a private party and the Government creates
> the property right subject to a Fifth Amendment claim, the proper
> remedy for infringement lies in a contract claim, not one for taking.

*Id*. at 18 (citing *Sun Oil*, 572 F.2d at 818).  Because the right at issue in *Allegre Villa* was governed by the loan agreement with the Government, the Court dismissed the takings claim and allowed the parties to proceed with discovery on the breach of contract claim.  *Id*. at 19.

Here, Portland's takings claim is entirely subsumed by its breach of contract claim because the complaint is premised on the notion that the U.S. Mint wrongfully failed to pay Portland for the coins that it voluntarily submitted pursuant to the redemption program.

We also note that Portland may not receive payment, under any circumstance, if it did not submit genuine coins to the U.S. Mint.  Title 18 U.S.C. § 492 mandates that all counterfeit coins of the United States be forfeited to the United States.  Coins deemed to be counterfeit are *per se* contraband, their mere possession is illegal, and they should not be returned to the holder. *United States v. Simmons*, No. CV F 96-5948 AWISWS, 2000 WL 33138083, at *3 (E.D. Cal. Dec. 14, 2000); *see also* Boggs v. Merletti, 987 F. Supp. 1 (D.D.C. 1997), aff'd sub nom., *Boggs v. Rubin*, 161 F.3d 37 (D.C. Cir. 1998).

The culpability or innocence of the property holder does not factor into the analysis. In *Bennis v. Michigan*, for example, the Supreme Court held that Mrs. Bennis, an innocent wife who had a property interest in a car that was forfeited after her husband used it in the commission of a crime, did not have a claim for a compensable taking. 516 U.S. 442 (1996). Mrs. Bennis's innocence did not factor into the Court's taking analysis. Rather, the Court held that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Id.* at 452.

Here, Portland does not even allege that it submitted genuine coins to the U.S. Mint. Instead, Portland  alleges that the Department of Homeland Security previously tested a tiny fraction of Portland's coins ($550 thousand out of the $8.51 million in coinage that Portland allegedly submitted to the U.S. Mint) in a different context, and that DHS concluded this tiny fraction was "indistinguishable from standard currency."  Compl.  ¶¶ 38-42.  For the remaining $8 million, Portland makes no affirmative statement that the coins were genuine, or anything that would support a good faith belief that they were genuine.  Paragraphs 57 and 75 of the complaint use circular logic to *imply* that the coins were genuine because "Either XRF testing or fire

assaying *would have* allowed the U.S. Mint to determine that the Portland Mint's shipment contained genuine U.S. Mint coins only.  Those tests *could* have been performed and should have been performed 20 months ago."  None of these statements amounts to an affirmative allegation that Portland submitted genuine coins to the U.S. Mint.

Accordingly, the takings claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, we respectfully request that the Court dismiss plaintiff's complaint for lack of jurisdiction and failure to state a claim.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

/s/ Eric J. Singley
ERIC J. SINGLEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 616-1273
Fax: (202) 307-0972
eric.j.singley@usdoj.gov

September 25, 2020                    Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of September, 2020, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Eric J. Singley</u>