IN THE UNITED STATES COURT OF FEDERAL CLAIMS

20-518C
(Senior Judge Horn)

PORTLAND MINT,

Plaintiff,

v.

UNITED STATES,

Defendant.

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

DEBORAH A. BYNUM
Assistant Director

ALISON S. VICKS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7573
Alison.S.Vicks@usdoj.gov

December 4, 2020                    *Attorneys for Defendant*

## TABLE OF CONTENTS

STATEMENT OF FACTS ....................................................................................................2

    I.      Background On U.S. Mint Mutilated Coin Redemption Program.................................2

    II.     Portland's August 2018 Submission Of Mutilated Coins...............................................3

ARGUMENT .........................................................................................................................7

    I.      Standards Of Review ....................................................................................................7

    II.     Portland Has Failed To Make A Claim For A Violation Of A Money-
           Mandating Regulation And Its Claim Must Be Dismissed............................................9

    III.    This Court Lacks Jurisdiction Over Portland's Implied-In-Law Contract
           Claim, And Portland Fails To Demonstrate That An Implied-In-Fact
           Contract Was Formed ..................................................................................................12

           A. Portland's Implied-In-Law Contract Claim Must Be Dismissed For
              Lack Of Jurisdiction..............................................................................................13

           B. Portland Has Failed To Adequately Allege The Formation Of An
              Implied-In-Fact Contract .......................................................................................14

              1. Nothing In The Regulations Or The Statute Indicates An Intent
                 By The Government To Contract .....................................................................15

              2. There Is Ambiguity In The Purported Offer And Acceptance
                 And A Lack Of Consideration ........................................................................20

                  i. Portland Has Failed To Allege An Unambiguous Offer And
                    Acceptance ..............................................................................................20

                  ii. Portland Also Fails To Allege Consideration ...........................................25

    IV.    Even Assuming The Complaint Sets Forth The Terms Of The Alleged
           Contract, It Lacks Specific Allegations Concerning The Authority Of
            A U.S. Mint Employee Or Agent To Enter Into The Contract ...................................26

    V.     Portland Fails To Sufficiently Allege Its Cause Of Action For Breach Of
           Implied Duty Of Good Faith And Fair Dealing...........................................................28

    VI.    Portland's Request For Declaratory Relief Should Be Dismissed.............................28

VII.     The Court Lacks Jurisdiction To Entertain Portland's Cause Of Action
         For Equitable Estoppel ................................................................................................. 30

VIII.    This Court Lacks Jurisdiction Over Portland's Fifth Amendment
         Takings Claim ................................................................................................................ 35

CONCLUSION ........................................................................................................................ 40

TABLE OF AUTHORITIES

**Cases**

*Acadia Tech., Inc. v. United States,*
    458 F.3d 1327 (Fed. Cir. 2006) ................................................................ 35, 36, 37

*Acceptance Ins. Cos., Inc. v. United States,*
    503 F.3d 1328 (Fed. Cir. 2007) ................................................................ 8

*Allen v. United States,*
    100 F.3d 133 (Fed. Cir. 1996) ................................................................ 25

*Am. Capital Corp. v. United States,*
    58 Fed. Cl. 398 (2003) ................................................................ 21

*Am. Fed. Bank, FSB v. United States,*
    62 Fed. Cl. 185 (2004) ................................................................ 21, 24

*Anderson v. United States,*
    344 F.3d 1343 (Fed. Cir. 2003) ................................................................ 18, 20, 23

*Armijo v. United States,*
    663 F.2d 90, 229 Cl. Ct. 34 (1981) ................................................................ 37

*ARRA Energy Co. I v. United States,*
    97 Fed. Cl. 12 (2011) ................................................................ 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................ 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................ 9

*Bennis v. Michigan,*
    516 U.S. 442 (1996) ................................................................ 38

*Blazavich v. United States,*
    29 Fed. Cl. 371 (1993) ................................................................ 8

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ................................................................ 11

*Bowen v. Public Agencies Opposed To Social Security Entrapment,*
    477 U.S. 41 (1986) ................................................................ 22

*Carter v. United States*,
    102 Fed. Cl. 61 (2011) ............................................................................... 26

*Centex Corp. v. United States*,
    395 F.3d 1283 (Fed. Cir. 2005) .................................................................. 28

*Century Exploration New Orleans, LLC v. United States*,
    745 F.3d 1168 (Fed. Cir. 2014) .................................................................. 30

*City of Cincinnati v. United States,*
    153 F.3d 1375 (Fed.Cir.1998) .................................................................... 13

*Crocker v. United States,*
    125 F.3d 1475 (Fed. Cir. 1997) .................................................................. 30

*Crocker v. United States,*
    37 Fed. Cl. 191 (1997) ............................................................................... 36

*D & N Bank v. United States,*
    331 F.3d 1374 (Fed. Cir. 2003) ..................................................... *passim*

*Davis Wetlands Bank LLC v. United States,*
    114 Fed. Cl. 113 (2013) ............................................................................. 20

*De Archibold v. United States,*
    57 Fed. Cl. 29 (2003) ................................................................................. 14

*Del-Rio Drilling Programs v. United States,*
    146 F.3d 1358 (Fed. Cir. 1998) .................................................................. 36

*Dodge v. Bd. of Educ.*,
    302 U.S. 74 (1937) ..................................................................................... 16

*Doe v. United States,*
    95 Fed. Cl. 546 (2010) ............................................................................... 27

*Estate of Bogley v. United States*,
    514 F.2d 1027 (Fed. Cir. 1975) .................................................................. 22

*eVideo Owners v. United States*,
    126 Fed. Cl. 95 (2016) .................................................................. 13, 14, 25

*Federal Crop Ins. Corp. v. Merrill*,
    332 U.S. 380 (1947) ............................................................................................. 33

*Fisher v. United States*,
    402 F.3d 1167 (Fed. Cir. 2005) ................................................................. 8, 10, 11

*Florida Rock Indus., Inc. v. United States*,
    791 F.2d 893 (Fed. Cir. 1986) ........................................................................ 36, 37

*Fraass Surgical Mfg. Co. v. United States*,
    505 F.2d 707 (Ct. Cl. 1974) ................................................................................. 29

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
    463 U.S. 1 (1983) .................................................................................................. 32

*Gonzalez-McCaulley Investment Grp., Inc. v. United States*,
    93 Fed. Cl. 710 (2010) ....................................................................................... 7, 8

*Gould v. United States*,
    67 F.3d 925 (Fed. Cir. 1995) .................................................................................. 7

*Greenlee Cnty. v. United States*,
    487 F.3d 487 (Fed. Cir. 2007) ............................................................................... 10

*Hall v. United States*,
    74 Fed. Cl. 391 (2006) ............................................................................................ 8

*Hanlin v. United States*,
    316 F.3d 1325 (Fed. Cir. 2003) .............................................................................. 17

*Harbert/Lummus Agrifuels Project v. United States*,
    142 F.3d 1429 (Fed. Cir. 1998) ............................................................................. 27

*Henke v. United States*,
    60 F.3d 795 (Fed. Cir. 1995) ................................................................................... 8

*Henry v. United States*,
    870 F.2d 634 (Fed. Cir. 1989) ............................................................................... 33

*Hercules, Inc. v. United States*,
    516 U.S. 417 (1996) ................................................................................. 8, 13, 14

*Holley v. United States,*
  124 F .3d 1462 (Fed. Cir. 1997) ....................................................................... 8, 32

*Ingham Regional Med. Ctr. v. United States,*
  126 Fed. Cl. 1 (2016) ............................................................................................ 9

*JANA, Inc. v. United States,*
  936 F.2d 1265 (Fed. Cir. 1991) ........................................................................... 31

*Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.,*
  525 F.3d 1299 (Fed. Cir. 2008) ........................................................................... 10

*Kam-Almaz v. United States,*
  682 F.3d 1364 (Fed. Cir. 2012) ...................................................................... 35, 36

*Kanemoto v. Reno,*
  41 F.3d 641 (Fed. Cir. 1994) ............................................................................... 29

*Knight v. United States,*
  52 Fed. Cl. 243 (2002) .......................................................................................... 8

*Larson v. Domestic & Foreign Commerce Corp.,*
  337 U.S. 682 (1949) ............................................................................................ 37

*Lawndale Restoration Ltd. v. United States,*
  95 Fed. Cl. 498 (2010) ........................................................................................ 26

*Lion Raisins, Inc. v. United States,*
  54 Fed. Cl. 427 (2002) .................................................................................. 13, 14

*Lion Raisins, Inc. v. United States,*
  416 F.3d 1356 (Fed. Cir. 2005) ................................................................... *passim*

*M & J Coal Co. v. United States,*
  47 F.3d 1148 (Fed. Cir. 1995) ............................................................................. 35

*Maniere v. United States,*
  31 Fed. Cl. 410 (1994) .......................................................................................... 8

*Martinez v. United States,*
  333 F.3d 1295 (Fed. Cir. 2003) ........................................................................... 11

*Martinez v. United States*,
  Nos. 10-569C, 10-730C, 2011 WL 1346941 (Fed. Cl. April 8, 2011) ...................................... 9

*Massie v. United States*,
  226 F.3d 1318 (Fed. Cir. 2000) ................................................................................... 29

*MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp.*,
  843 F. Supp. 2d 996 (D. Minn. 2012) ......................................................................... 30

*McAfee v. United States*,
  46 Fed. Cl. 428 (2000) ............................................................................................... 14

*McNabb v. United States*,
  54 Fed. Cl. 759 (2002) ............................................................................................... 34

*Melrose Assocs., L.P. v. United States*,
  45 Fed. Cl. 56 (1999) ................................................................................................. 31

*Merritt v. United States*,
  267 U.S. 338 (1925) ................................................................................................... 14

*Meschkow v. United States*,
  109 Fed. Cl. 637 (2013) ............................................................................................. 36

*Modern Sys. Techs Corp. v. United States*,
  979 F.2d 200 (Fed. Cir. 1992) ................................................................................... 21

*Narvaez v. Wilshire Credit Corp.*,
  757 F. Supp. 2d 621 (N.D. Tex. 2010) ...................................................................... 29

*Nat'l R.R. Passenger Corp. v. Atchison, Topeka, And Santa Fe Railway Co.*,
  470 U.S. 451 (1985) ................................................................................................... 16

*Nelson v. United States*,
  16 Cl. Ct. 510 (1989) ................................................................................................. 17

*New Era Constr. v. United States*,
  890 F.2d 1152 (Fed. Cir. 1989) ................................................................................. 18

*NSK Ltd. v. United States*,
  115 F.3d 965 (Fed. Cir. 1997) ................................................................................... 25

*Parks v. United States,*
    15 Cl. Ct. 183 (1988) .................................................................................... 29

*Petrini v. United States,*
    19 Cl. Ct. 41 (1989) ...................................................................................... 20

*Piszel v. United States,*
    833 F.3d 1366 (Fed. Cir. 2016) .................................................................... 37

*Reynolds v. Army and Air Force Exch. Serv.,*
    846 F.2d 746 (Fed. Cir. 1988) ........................................................................ 8

*Rith Energy, Inc. v. United States,*
    270 F.3d 1347 (Fed. Cir. 2001) .................................................................... 36

*Rogers v. United States,*
    95 Fed. Cl. 513 (2010) .................................................................................... 7

*Russell v. United States,*
    78 Fed. Cl. 281 (2007) .................................................................................. 11

*San Carlos Irr. & Drainage Dist. v. United States,*
    877 F.2d 957 (Fed. Cir. 1989) ...................................................................... 14

*Schrader v. United States,*
    103 Fed. Cl. 92 (2012) .................................................................................. 35

*Scott Timber Co. v. United States,*
    692 F.3d 1365 (Fed. Cir. 2012) .................................................................... 28

*Seuss v. United States,*
    535 F.3d 1348 (Fed. Cir. 2008) .................................................................... 15

*Tabb Lakes, Ltd. v. United States,*
    10 F.3d 796 (Fed. Cir. 1993) ........................................................................ 36

*Trauma Serv. Grp. v. United States,*
    104 F.3d 1321 (Fed. Cir. 1997) ........................................................... 7, 13, 27

*United Safeguard Distribs. Ass'n v. Safeguard Bus. Sys.,*
    145 F. Supp. 3d 932 (C.D. Cal. 2015) .......................................................... 29

*United States v. King*,
  395 U.S. 1 (1969) ................................................................................................ 29

*United States v. Navajo Nation*,
  556 U.S. 287 (2009) ......................................................................................... 9, 10

*United States v. Simmons*,
  No. CV F 96-5948 AWISWS, 2000 WL 33138083 (E.D. Cal. Dec. 14, 2000) ................ 35, 37

*United States v. Testan*,
  424 U.S. 392 (1976) .......................................................................................... 10

*United States v. Winstar Corp.*,
  518 U.S. 839 (1996) .................................................................................. 19, 20, 37

*Urban Data Systems, Inc. v. United States*,
  699 F.2d 1147 (Fed. Cir. 1983) ............................................................................ 34

*Woll v. United States*,
  45 Fed. Cl. 475 (1999) ...................................................................................... 26

## Statutes

5 U.S.C. §§ 701-706 ................................................................................... 11, 30

18 U.S.C. § 492 .................................................................................... 3, 34, 37

28 U.S.C. § 1491(a)(l) ................................................................................... 7

28 U.S.C. § 2201 ...................................................................................... 5, 6

28 U.S.C. § 2412 ...................................................................................... 5, 7

31 U.S.C. § 321 ........................................................................................ 2

31 U.S.C. § 5111(c)(1) ................................................................................ 16

31 U.S.C. § 5112 ..................................................................................... 32

31 U.S.C. § 5120 ....................................................................................... 2

31 U.S.C. § 5136 ................................................................................... 4, 29

33 U.S.C. § 1238(a) .................................................................................. 16

41 U.S.C. § 7103(f)(3) ........................................................................................... 4

## Regulations

31 C.F.R. part 100 ................................................................................................. 2

31 C.F.R. § 100.10 ................................................................................................ 3

31 C.F.R. § 100.11 ........................................................................................ *passim*

41 C.F.R. § 102-41.80 ........................................................................................... 3

## Other Authorities

Williston on Contracts, § 6.10 (4th ed. 1990) ............................................... 2, 24

Restatement (Second) of Contracts .......................................................... 20, 21, 22

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE PORTLAND MINT,                    )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )
                                      )      No. 20-518C
                                      )      (Judge Horn)
THE UNITED STATES,                    )
                                      )
                    Defendant.        )
                                      )

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Rules 12(b)(l) and 12(b)(6) of the Rules of the United States Court Federal Claims, defendant, the United States, respectfully requests the Court dismiss the amended complaint filed by plaintiff, The Portland Mint (Portland).  In its amended complaint, Portland now alleges that the United States Mint (Mint) has committed a regulatory violation.  In addition, Portland continues to allege that a contract was formed, pursuant to the regulations, with officials of the Mint to redeem mutilated coins, but, even after amendment, the allegations in the complaint do not establish the elements of a contract.  Further, even assuming that the complaint plausibly alleges a contract, it fails to specify, other than in conclusory terms, the terms of the alleged contract, instead relying on regulatory requirements.  Additionally, Portland fails to sufficiently allege facts to support its implied duty of good faith and fair dealing and equitable estoppel claims.  Finally, Portland's Fifth Amendment Takings claim is outside the Court's Tucker Act jurisdiction.  As we demonstrate below, Portland's complaint should be dismissed.

In support of this motion, we rely upon the amended complaint and the following brief.

STATEMENT OF FACTS[1]

I.    Background On U.S. Mint Mutilated Coin Redemption Program

The U.S. Mint, a bureau of the Department of the Treasury, is the sole manufacturer of

legal tender coinage for the United States and is responsible for producing and circulating

coinage for the nation to conduct its trade and commerce.

Title 31 of the United States Code, section 5120, instructs that the Treasury "shall melt

obsolete and worn United States coins withdrawn from circulation."  31 U.S.C. § 5120.  The

statute does not prescribe how the U.S. Mint is to find bent or partial coins in order to melt them.

Treasury has promulgated regulations establishing the U.S. Mint's Mutilated Coin

Redemption Program (redemption program) under the authority of 31 U.S.C. § 5120 and 31

U.S.C. § 321 (General authority of the Secretary).  *See* 31 C.F.R. part 100, subpart C.  The

program is set up as a public service and is discretionary, not mandatory, under the statute.  31

U.S.C. § 321(b).  The program's purpose is to facilitate commerce by allowing individuals and

entities to exchange bent or partial coins for their cash equivalency.

The regulations establish that coins may be submitted for examination for "possible

redemption."  31 C.F.R. § 100.11.  To be redeemed, the bent or partial coins that are submitted

must be determined to be, upon examination, "lawfully held" and "readily and clearly

identifiable as to genuineness and denomination."  *See* 31 C.F.R. § 100.11(a)-(b).  Under the

Program, no redemption will be made at all when "[a] submission, *or any portion of a*

*submission*, demonstrates a pattern of intentional mutilation or an attempt to defraud the United

States[,]. . . [a] submission appears to be part of, or intended to further, any criminal activity," or

_____

[1]    For the purposes of this motion to dismiss, the Government accepts the facts, to the
extent they are pled as facts and not as characterizations or legal conclusions, in Portland's
complaint as true.  In the event the Court does not grant the Government's motion, the
Government does not concede the facts and will contest them as necessary.

a submission "contains a material misrepresentation of facts" under other parts of subsection (c). *See* 31 C.F.R. § 100.11(c)(6)(i)-(iii) (emphasis added).  If redemption is prohibited for any of these reasons, the submitted coins will not be returned.

Redemption will also not be made if the "material presented" for redemption "is not identifiable as United States coins," if the submission contains "any contaminant that could render the coins unsuitable for coinage metal," or the submission contains "more than a nominal amount of uncurrent coins," defined at 31 C.F.R. § 100.10.  31 C.F.R. § 100.11(c)(6)(iv)-(vi).  In these cases, participants whose submissions are unsuitable must retrieve their submissions within 30 days of notification of rejection of the materials, otherwise the property "will be treated as voluntarily abandoned property, pursuant to 41 C.F.R. § 102-41.80," and may be disposed of by the Mint.  31 C.F.R. §§ 100.11(c)(6)(iv)-(vi).  Importantly, materials suspected to be counterfeit do not fall under these latter three provisions, as possession of counterfeit material is illegal and possession of such material would not be returned to the participant who submitted it.  18 U.S.C. § 492 (mandating that all counterfeit coins of the United States be forfeited to the United States). The Mint also reserves the right to test samples from the submission to authenticate the material in the submission.  31 C.F.R. § 100.11(c)(4).  Finally, the regulations vest the Director of the U.S. Mint, or a designee, with "final authority with respect to *all aspects* of redemptions of bent or partial coin submissions."  *Id.* at (7) (emphasis added).

II.    Portland's August 2018 Submission Of Mutilated Coins

According to the complaint, in January 2018, Portland submitted an application to participate in the re-opened redemption program.[2]  *See* Amended Complaint (Am. Compl.) ¶ 44.

---

[2]  Due to concerns about fraud in the redemption program (especially with regard to bulk shipments of coins for redemption from overseas), the U.S. Mint suspended the program in

Afterwards, Portland received a deficiency notification letter from the U.S. Mint identifying certain deficiencies in Portland's application. *Id.* ¶ 45. Sometime after Portland responded to the deficiency notice, the U.S. Mint scheduled Portland to deliver its coins on August 1 and 2, 2018, to the Olin Brass foundry in Illinois for "possible redemption." *Id.* ¶¶ 50-54. Portland delivered approximately 425,100 pounds of dimes, quarters, and half-dollars, and 1,819 pounds of nickels. *See id.* ¶ 53. Portland alleges that following the delivery of the coins to Olin Brass, two U.S. Mint employees reported that the coins had been melted without issue and supposedly promised payment within 4-6 weeks. *Id.* ¶ 57.

In the months following the delivery of the coins to Olin Brass, the U.S. Mint informed Portland that preliminary testing of the materials submitted by Portland identified technical anomalies that required additional, detailed testing to ensure the coins were appropriate for redemption. *Id.* ¶ 61, 63. On March 13, 2020, Portland sent a claim to the U.S. Mint, purportedly pursuant to the Contract Disputes Act, 41 U.S.C. § 7103(f)(3). *Id.* ¶ 70. The U.S. Mint responded, informing Portland that preliminary testing of the materials submitted by Portland identified technical anomalies that required additional, detailed testing to ensure the coins were appropriate for redemption. *Id.* ¶ 72. In addition, the U.S. Mint informed Portland that the U.S. Mint is excluded from procurement statutes and regulations pursuant to 31 U.S.C. § 5136 ("*Provided further*, That provisions of law governing procurement or public contracts shall not be applicable to the procurement of goods or services necessary for carrying out Mint programs and operations.").[3]

_____

November 2015. After revising the program's regulations and standard operating procedures, the Mint reopened the program in January 2018.

[3] 31 U.S.C. § 5136 also provides "[t]hat the term 'Mint operations and programs' means (1) the activities concerning, and assets utilized in, the production [. . .] of coinage[.]"

Portland filed suit in this Court seeking $8.51 million for the coins it delivered in August 2018. Complaint (Compl.) at ¶ 113(b). Portland's original complaint included eight counts: (1) breach of an express contract based on Portland's application to the Redemption program, the Mint's acceptance of that application, and "the Mint's regulations governing that application and the Redemption program. . ."; (2) breach of an implied contract based on Portland's purported agreement to deliver an "agreed-upon number of mutilated coins to the Mint," and the Mint's purported agreement "to accept that agreed-upon number of mutilated coins," and further, the Mint's purported agreement to "redeem" the coins pursuant to its regulations; (3) breach of the implied duty of good faith and fair dealing inherent in every contract; (4) unjust enrichment; (5) equitable estoppel to preclude the Government from claiming that the coins are counterfeit; (6) declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201; (7) violation of the Fifth Amendment takings clause; and (8) a claim for reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. Compl. at ¶ 78, 84; *see generally*, ¶¶ 82-125.

The United States moved to dismiss Portland's complaint, on the basis that Portland's allegations concerning offer, acceptance, and intent to contract were insufficient to demonstrate that an express contract was formed; Portland failed to identify the substantive provisions of any alleged contract, even if it had sufficiently demonstrated the existence of one; Portland failed to include specific allegations concerning the authority of a U.S. Mint employee or agent to enter into a contract, and Portland failed to sufficiently allege its cause of action for breach of the implied duty of good faith and fair dealing. *See* Defendant's Motion to Dismiss (Def. Mot.), ECF No. 13, at 5-11. In addition, the United States moved to dismiss Portland's request for declaratory judgment because Portland failed to present a claim for actual, presently due money damages, as required for the Court to exercise jurisdiction over a claim for declaratory judgment.

*Id.* at 11-12.  Further, the Court lacked jurisdiction over Portland's request for equitable estoppel because Portland had not sufficiently alleged authority to contract, and equitable estoppel, if applicable at all against the United States, must be based on a Government agent's actions when that agent was acting within the scope of his authority.  *Id.* at 12-14.  The Government further argued that sovereign immunity barred Portland's claim for unjust enrichment, and, finally, that the Court lacked jurisdiction over Portland's takings claim because Portland's claim appeared to be based on a challenge to the lawfulness of the Government's actions, and such a claim belongs in district court, not this Court.  *Id.* at 14-19.

After a status conference, Portland amended its complaint, dropping its allegation that an express contract was formed and adding as its first count allegations of a "violation of [a] federal regulation for failure to make payments pursuant to 31 C.F.R. § 100.11."  Am. Compl.  In addition, Portland continues to allege, in count two, breach of an implied contract based on Portland's acceptance into the redemption program and its purported "offer" to deliver an "agreed-upon number of mutilated coins to the Mint," and the Mint's purported agreement "to accept that agreed-upon number of mutilated coins," with the essential terms of the purported contract defined by the Mint's regulations.  *Id.* ¶¶ 88-89.  Portland further alleges that "contracting for the delivery of mutilated coins was an integral part" of Anthony Holmes, Jr.'s duties as an employee of the Mint, *id.* ¶ 90, and that the Mint "redeemed" the mutilated coins delivered by Portland and "agreed to pay [Portland] for the value of the coins" that the Mint "accepted and redeemed."  *Id.* ¶ 92.  Portland also re-alleges a breach of the implied duty of good faith and fair dealing inherent in every contract (count 3); equitable estoppel to preclude the Government from claiming that the coins are counterfeit (count 4); declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 (count 5); violation of the Fifth Amendment

takings clause (count 6); and its claim for reasonable attorney's fees under the Equal Access to

Justice Act, 28 U.S.C. § 2412 (count 7).  *Id.* ¶¶ 97-125.  Portland has dropped its count for unjust

enrichment.  *See id.*

The U.S. Mint has determined the coins were counterfeit, and the Mint is preparing a

formal notification to Portland denying redemption.[4, 5]

<u>ARGUMENT</u>

I.    <u>Standards Of Review</u>

"The Tucker Act supplies the Court of Federal Claims with jurisdiction for claims against

the United States founded upon the Constitution, an Act of Congress, a regulation of an

executive department, or an express or implied contract."  *Trauma Serv. Grp. v. United States*,

104 F.3d 1321, 1324 (Fed. Cir. 1997); 28 U.S.C. § 1491(a)(l); *Gould v. United States*, 67 F.3d

925. 928 (Fed. Cir. 1995).  "The party invoking jurisdiction has the burden to show compliance

with the Tucker Act."  *Id.*; *see Rogers v. United States*, 95 Fed. Cl. 513, 515 (2010) ("Plaintiffs

bear the burden of establishing subject matter jurisdiction by a preponderance of the evidence

before the Court proceeds to the merits of the action" (citation omitted)).  "If jurisdiction is

found to be lacking, the court must dismiss the action."  *Gonzalez-McCaulley Investment Grp.,*

*Inc. v. United States*, 93 Fed. Cl. 710, 713 (2010); RCFC 12(h)(3).  Where Tucker Act

jurisdiction is based on a contract theory, as is Portland's complaint, jurisdiction "extends only to

---

[4]  The Mint is preparing a letter officially denying redemption, but Portland has been notified orally, as well in in our previous motion to dismiss and this motion, that redemption of its coins will be denied because the coins are counterfeit.

[5]  The Mint has prepared a final report regarding its investigation into the authenticity of Portland's submission.  This report is subject to the investigatory files privilege as well as potentially subject to other privileges. Counsel will prepare a version of the report that can be shared with the Court and plaintiff's counsel, under a protective order, if necessary for the advancement of this case after the motion to dismiss has been decided.

contracts either express or implied in fact, and not to claims on contracts implied in law."
*Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996).

"When analyzing jurisdiction, the court starts with the complaint, 'which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim.'" *Gonzalez-McCaulley*, 93 Fed. Cl. at 713 (quoting *Holley v. United States*, 124 F .3d 1462, 1465 (Fed. Cir. 1997)). "A challenge to the Court of Federal Claims' jurisdiction may be overcome on the basis of well-pleaded allegations in the complaint." *Acceptance Ins. Cos., Inc. v. United States,* 503 F.3d 1328, 1334 (Fed. Cir. 2007); *see also Fisher v. United States,* 402 F.3d 1167, 1175 (Fed. Cir. 2005).

When deciding a motion to dismiss under RCFC 12(b)(l), the Court "assume[s] all factual allegations [in the complaint] to be true and draw[s] all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citation omitted); *see also Hall v. United States*, 74 Fed. Cl. 391, 393 (2006). However, if the moving party challenges the factual allegations concerning jurisdiction, the court must resolve the allegations before turning to the merits. *See, e.g.*, *Knight v. United States*, 52 Fed. Cl. 243, 246-4 (2002), *aff'd in part, rev'd in part, and remanded,* 65 Fed. App'x 286, 2003 WL 2008075 (Fed. Cir. 2003); *Maniere v. United States*, 31 Fed. Cl. 410, 413-15 (1994). The Court is not required to accept the factual allegations in the complaint at face value. To the contrary, "[i]f the motion to dismiss is for lack of jurisdiction . . . and [the moving party] 'challenges the truth of the jurisdictional facts alleged in the complaint . . . the . . . court may consider relevant evidence in order to resolve the factual dispute.'" *Blazavich v. United States,* 29 Fed. Cl. 371, 373 (1993) (quoting *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir. 1988)).

With respect to Rule 12(b)(6), a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ingham Regional Med. Ctr. v. United States,* 126 Fed. Cl. 1, 19 (2016), *aff'd in part, rev'd in part*, 874 F.3d 1341 (Fed. Cir. 2017) ("[f]actual allegations must be enough to raise a right to relief above the speculative level." (citation omitted)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (to avoid dismissal, a complaint must "state a claim to relief that is plausible on its face") (quoting *Twombly*, 550 U.S. at 570)).

"[D]etermining whether a complaint states a plausible claim will . . . be a context-specific task." *Iqbal*, 556 U.S. at 679. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but not 'show[n]' - that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nce the court excises any conclusory or formulaic components of a plaintiff's complaint, the court must determine whether the remaining factual allegations in the complaint 'plausibly suggest an entitlement to relief.'" *Martinez v. United States*, Nos. 10-569C, 10-730C, 2011 WL 1346941, *2 (Fed. Cl. April 8, 2011) (quoting *Iqbal*, 556 U.S. at 681).

II.    Portland Has Failed To State A Claim For A Violation of A Money-Mandating Regulation And Its Claim Must Be Dismissed

Portland contends that the Mint has violated its regulatory provisions because the Mint has not yet redeemed the approximately 427,000 pound of bent or partial dimes, quarters, half-dollars, and nickels that Portland submitted for possible redemption on August 1 and 2, 2018. Am. Compl. ¶¶ 80-85. Portland's contention suffers from a number of fatal flaws.

First, for a plaintiff to proceed in this Court on the basis of a statute or regulation, the plaintiff must demonstrate that its source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Navajo Nation*, 556

U.S. 287, 290 (2009) (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)).  The source of law granting monetary relief must be distinct from the Tucker Act itself.  *See Navajo Nation*, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[ ] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)." (citing *Testan*, 424 U.S. at 290)).  "If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction."  *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting *Greenlee Cnty. v. United States*, 487 F.3d 871,876 (Fed. Cir. 2007)); *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act.").

Portland alleges that it is owed damages pursuant to the regulatory provision, 31 C.F.R. § 100.11(d)(1), which establishes the rates by which lawfully-held, genuine coins may be redeemed if they make it through the redemption process of 31 C.F.R. § 100.11(c).  Portland suggests that this provision is money-mandating, *see* Am. Compl. ¶ 84, even though the construction of the regulation itself shows that redemption of submitted coins is highly contingent and not guaranteed.  But to be money-mandating for jurisdictional purposes, a statute or regulation need only be able to be "fairly [] interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s]."  *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (quoting *United States v. Mitchell,* 463 U.S. 206, 219 (1983)).  So, if genuine, lawfully-held coins are submitted, and none of the prohibitions on redemption apply, then the regulatory provision that Portland cites conceivably entitles a submitter of coins to damages if payment is refused.

But even assuming that the regulation setting redemption rates is money-mandating, that is not the end of the inquiry.  Portland must identify a "breach of the duties [the regulation] impose[s]," *Fisher*, 402 F.3d at 1173, and Portland has identified no such breach because it has not established that the Mint has refused payment for genuine, lawfully-held coins to which none of the prohibitions on redemption apply.  Instead, as Portland well knows, the Mint conducted in-depth analysis into the authenticity of Portland's submission, and believes one or more of the prohibitions on redemption apply.  31 C.F.R. § 100.11(c).  And a refusal of payment by the U.S. Mint for a lawful reason under the regulations would not result in a cause of action in this Court, but would, instead, constitute a challenge to the reasonableness of the agency following its own regulation (or a challenge to the regulation itself), which is properly in district court pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, not in this Court.  The same is true to the extent that Portland requests specific performance in the form of an order directing the Mint to redeem its coins (or take some other action).  This Court does not possess jurisdiction to determine whether the Mint is acting unreasonably or failing to follow its own regulations in relation to Portland's coin submission, or to order specific performance.  *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988) ("The Claims Court does not have the general equitable powers of a district court to grant prospective relief."); *see also Russell v. United States*, 78 Fed. Cl. 281, 288 (2007) ("[T]he APA confers jurisdiction for judicial review of final agency decisions on the United States district court and not the Court of Federal Claims.") (citing *Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc)).

Thus, although Portland throughout its complaint asserts that its coins have been "redeemed," this is inaccurate and appears based on Portland's conflation of submission of its coins for examination with ultimate redemption.  *See*, *e.g*., Am. Compl. ¶ 66 (alleging that the

Mint "redeemed the Portland Mint's shipment"); ¶ 68 (incorrectly stating that the Mint directed Portland to "redeem" its coins when the Mint, in fact, merely scheduled delivery of the coins). The regulations are clear that only lawfully-held, genuine coins ultimately be redeemed at the rates set forth under 31 C.F.R. § 100.11(d). *See* 31 C.F.R. § 100.11(a) ("Lawfully held bent or partial coins of the United States may be submitted to the United States Mint for examination in accordance with the provisions in this subpart."). The regulations are also clear that submitted coins may not necessarily be redeemed, as redemption is prohibited in certain circumstances. *Id.* at (c)(6). Moreover, coins that are submitted to the redemption program might not even be returned to the submitter, if intentional mutilation, fraud, criminal activity, or material misrepresentation of facts are discovered upon the Mint's examination of the submission. *Id.* at (i)-(iii). Portland's coins have not been "redeemed," and the U.S. Mint believes they are counterfeit and, thus, pursuant to the regulations, no redemption will be made.

Portland's inaccurate characterizations aside, the Mint has not "redeemed" the coins because it has determined that they are not suitable for redemption, as it has communicated to Portland. *See, e.g.*, Am. Compl. ¶ 72 (recounting communication from the Chief Counsel to the Mint regarding the ongoing review of Portland's submission and that no final decision to redeem the coins had yet been made). The Mint's refusal to redeem coins for a lawful reason under the regulations does not equate to a violation of those regulations. Accordingly, Portland has failed to state a claim for a violation of a money-mandating regulation, and its claim must be dismissed.

III.    This Court Lacks Jurisdiction Over Portland's Implied-In Law Contract Claim, And Portland Fails To Demonstrate That An Implied-In-Fact Contract Was Formed

In addition to alleging that the Mint has violated its own regulations, Portland alleges that "a valid implied contract existed between the Mint and the Portland Mint." Am. Compl. ¶ 87.

As an initial matter, Portland refers merely to an "implied contract" and does not clarify whether it is alleging an implied-in-fact contract or a contract implied-in-law.  In either case, however, Portland's claim must be dismissed.

A.      Portland's Implied-In-Law Contract Claim Must Be Dismissed For Lack Of Jurisdiction

First, because Portland bases its implied contract claim on the U.S. Mint's purported legal duties to act, it appears to be alleging a contract implied-in-law.  *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996) ("[A]n agreement implied in law is a 'fiction of law' where "a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress." (citation omitted)).  To invoke the jurisdiction of the United States Court of Federal Claims for breach of contract claims, a plaintiff "must show that either an express or implied-in-fact contract underlies its claim." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).  Portland no longer alleges that any express contract was formed, and it admits that the "essential terms of the implied contract are found in the Mint's regulations."  Am. Compl. ¶ 89.  Moreover, the only duty Portland cites on the part of the Mint is contained in the regulation—namely, the Mint's establishment of redemption rates for legally-redeemable coins in 31 C.F.R. § 100.11(d).  *Id.* Thus, the contract that Portland appears to allege was "implied" is based solely on the legal duties created by the regulations.  "This Court has long recognized, . . .that 'a duty imposed by law [does] not create a contract within the Tucker Act jurisdiction of the [C]ourt.'").  *eVideo Owners v. United States*, 126 Fed. Cl. 95, 104 (2016), *aff'd*, 680 F. App'x 1004 (Fed. Cir. 2017) (citing *Lion Raisins, Inc. v. United States*, 54 Fed. Cl. 427, 432 (2002)); *see also City of Cincinnati v. United States,* 153 F.3d 1375, 1377 (Fed. Cir. 1998) ("Implied-in-fact contracts, which are within the jurisdiction of the Court of Federal Claims, differ significantly from

implied-in-law contracts, which impose duties that are deemed to arise by operation of law and are outside the jurisdiction of the Court of Federal Claims.").

Accordingly, Portland has presented a classic allegation of an implied-in-law contract, over which this Court does not possess jurisdiction. *Merritt v. United States*, 267 U.S. 338, 341 (1925) (Tucker Act does not provide jurisdiction to consider an implied-in-law contract); *accord Hercules*, 516 U.S. at 423-24 ("We have repeatedly held that this jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law."). Portland clearly points to a duty that arises by operation of law to establish the alleged contracts with the United States. *See* Am. Compl. ¶ 89 (citing 31 C.F.R. § 100.11(d)).  Such a duty cannot create an implied-in-fact contract that would fall within the Court's jurisdiction under the Tucker Act. *Lion Raisins*, 54 Fed. Cl. at 432.  Accordingly, the Court should dismiss Portland's "implied contract" claim for lack of jurisdiction. *eVideo Owners*, 126 Fed. Cl. at 104.

> **B.** **Portland Has Failed To Adequately Allege The Formation Of An Implied-In-Fact Contract**

But even if we ignore Portland's clear allegations of an implied-in-law contract and treat Portland's allegations as attempting to establish an implied-in-fact contract, Portland's claim fails.  None of its allegations support a finding that an implied-in-fact contract was formed.  It is well settled that "[t]o recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).  Moreover, "[a] well pleaded allegation of an express, or implied-in-fact, contract necessarily includes allegations going to each of the requisite elements of a contract." *De Archibold v. United States*, 57 Fed. Cl. 29, 32 (2003) (quoting *McAfee v. United States*, 46 Fed. Cl. 428, 432, (2000), *appeal dismissed*, 250 F.3d 762 (Fed. Cir.

2000)).  To establish a valid contract with the Government, a plaintiff must allege and prove (1) mutuality of intent to contract, (2) lack of ambiguity in offer and acceptance, (3) consideration, and (4) authority on the part of the Government agent entering the contract.  *Seuss v. United States*, 535 F.3d 1348, 1359 (Fed. Cir. 2008).  But Portland cannot demonstrate any of these elements, and there is no contract between the Mint and Portland, warranting dismissal of count two.

1.      Nothing In The Regulations Or The Statute Indicates An Intent By the Government To Contract

There is no intent to contract regarding the submission of mutilated coins submitted for an examination and "possible redemption" by the Mint.  It is axiomatic that "there must . . . be a clear indication of intent to contract" to conclude that "a contract was formed."  *D & N Bank v. United States*, 331 F.3d 1374, 1378 (Fed. Cir. 2003).  Portland alleges that "mutual intent to contract" was demonstrated "whereby the Portland Mint, after having been accepted to participate in the Redemption Program, offered to deliver an agreed-upon number of mutilated coins to the Mint, and the Mint agreed to accept that agreed-upon number of mutilated coins at Olin Brass on August 1 and 2, 2018."  *Id.* ¶ 88.  But these allegations do not describe the intent required for a contract.

There is no indication in the Act requiring the Secretary to melt obsolete or worn coins, or the Mint's regulations regarding its examination process for possible redemption of mutilated coins, that the United States intended to bind itself by contract to those who submit mutilated coins for possible redemption.  The Supreme Court has "[f]or many decades, . . . maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'"  *Nat'l R.R.*

*Passenger Corp. v. Atchison, Topeka And Santa Fe Railway Co.*, 470 U.S. 451, 465-66 (1985) (quoting *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79 (1937)).  This "well-established presumption is grounded in the elementary proposition that the principal function of the legislature is not to make contracts, but to make laws that establish the policy of the state."  *Id.* at 466.  Thus, "the party asserting the creation of a contract must overcome this well-founded presumption," and, "absent 'an adequate expression of an actual intent' of the State to bind itself . . . this Court simply will not lightly construe that which is undoubtedly a scheme of public regulation to be, in addition, a private contract to which the State is a party."  *Id.* at 466-67 (citation omitted).

Nothing in the statute requiring the Secretary to melt obsolete or worn coins or the regulations setting forth the circumstances under which the Mint will redeem mutilated coins "create[s] or speak[s] of a contract" between the United States and those who submit mutilated coins for redemption.  *Id.* at 467 (courts first look to the language of the relevant statutes and regulations to determine whether they indicate the Government's intent to contract); *compare* 31 U.S.C. § 5111(c)(1) ("The Secretary *may* make contracts, on conditions that the Secretary decides are appropriate and in the public interest . . . necessary to produce [United States] coins[.]") (emphasis added) *with* Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1288(f)(3) ("The Administrator shall act on such [applications] and his approval . . . *shall be deemed to be a contractual obligation* of the United States . . . .") (emphasis added).

Consequently, there is nothing in the statute or the Mint's regulations indicating the Government's intent to bind itself by contract to pay for coins merely submitted for examination and not yet determined to be suitable for redemption.  Moreover, nothing requires the Government to pay any amount if the coins are determined to be non-redeemable and non-returnable under the regulations, due to intentional mutilation, fraud, criminal activity, or

material misrepresentation.  And, even if the Government may arguably be bound by its

regulations to redeem, at face value, lawfully-held, genuine United States coins that are not

subject to the prohibitions on redemption in 31 C.F.R. § 100.11(c)(6), such mandatory provisions

have been held by courts to *not* indicate intent to contract.  *See ARRA Energy Co. I v. United

States*, 97 Fed. Cl. 12, 28 (2011) (dismissing plaintiffs' implied-in-fact contract claim because

the statute failed to indicate an unambiguous offer or intent to contract, even though the

government may have had a statutory obligation to make an award to the plaintiffs) (citing

*Hanlin v. United States*, 316 F.3d 1325, 1331 (Fed. Cir. 2003)).  Thus, unlike statutes or

regulations that clearly and adequately express the Government's intent to contract, the

regulations here arguably only contain a requirement to pay if the coins submitted for possible

redemption are lawfully-held, genuine, United States coins and do not fall into one of the

exceptions to redemption.  31 C.F.R. § 100.11(c)(6).

Further, Portland's implication that a contract was formed, at least in part, through its

application to and acceptance into the redemption program is incorrect.  *See* Am. Compl. ¶¶ 44-

49, 88.  Portland cannot establish the existence of a contract and the Government's intent merely

by relabeling regulatory application actions as part of the contracting process.  In *Pennsylvania*

*Department of Public Welfare v. United States*, the Court granted dismissal of a breach of

contract claim for failure to state a claim, notwithstanding the existence of an alleged offer and

acceptance through the completion of application forms by the plaintiff which were approved by

the Department of Health and Human Services, because neither the statute or the regulations at

issue expressed an intent on the part of the Government to be bound by contract. 48 Fed. Cl. 785,

791 (2001); *see also Nelson v. United States*, 16 Cl. Ct. 510, 514-15 (1989) (rejecting the

existence of a contract based on an application to and acceptance by the Government where the

17

governing statute did not contemplate the creation of a contractual obligation).  The same is true

here.  Portland's acceptance into the redemption program did not form a contract, but instead

merely indicated that Portland met the preliminary certification requirements to be allowed to

submit mutilated coins over a certain amount for examination and possible redemption.  *See* 31

C.F.R. § 100.11(c)(1) (certification requirement).

   Moreover, the purported "acceptance" here – the Mint's approval of Portland's

application and its physical acceptance of a delivery of coins, Am. Compl. ¶ 88 – merely reflects

the Mint's "performance of its regulatory or sovereign functions."  As the Federal Circuit made

clear in *D & N Bank*, such actions "do[] not create contractual obligations."  *D & N Bank*, 331

F.3d at 1378-79 (citing *New Era Constr. v. United States*, 890 F.2d 1152, 1155 (Fed. Cir. 1989));

*see Anderson v. United States*, 344 F.3d 1343, 1357 (Fed. Cir. 2003) (holding that "regulatory

proclamations are insufficient to create contractual obligations").

   Portland's contract claim is, in fact, foreclosed by *D & N Bank*.  There, the plaintiff

alleged that the Federal Home Loan Bank Board's merger approval represented the

Government's contractual promise to permit the use of certain accounting treatment for

supervisory goodwill.  *D & N Bank*, 331 F.3d at 1378-79.  The Federal Circuit rejected the

proposition that, standing alone, the actions of an agency performing a regulatory or sovereign

function do "not amount to an intent to contract."  *Id.*  Instead, the Federal Circuit held that

"performing regulatory duties or setting up a regulatory program is consistent with the regulatory

function of an agency and says nothing about the role of the agency as an independent

contracting body without further evidence."  *Id.* at 1380.  This holding applies here: the Mint is

performing its regulatory function of examining—for "possible redemption"—the coins

submitted by Portland, and it is not forming a contract by undergoing its own regulatory process

to determine if Portland's coins are, in fact, redeemable under the regulations, and nothing in the regulations or the Mint's actions provides "further evidence" about the role of the Mint as an independent contracting body.  *See id.*

Likewise, no contract was formed here because the Mint was, even according to Portland's allegations, performing its regulatory or sovereign functions when it approved Portland's application to participate in the redemption program and accepted delivery of Portland's coins—the purported "acceptance."  Am. Compl. ¶ 88.  But nothing in the statute regarding melting coins or the regulations governing the redemption program contemplated that the Mint would enter into contracts when approving applications for participation in the redemption program, or provided the Mint any negotiating room that would permit it to make separate deals with coin submitters.  Rather, the terms of participation in the redemption program and the rates of redemption themselves are determined by the regulations.  *See* 31 C.F.R. § 100.11(c).  Thus, actions on applications for the redemption program or even acceptance of coins for possible redemption do not reflect a promissory undertaking.  As a result, like the plaintiff in *D & N Bank*, Portland is left alleging that it "simply submitted an application for approval [to participate in the program]," and "the [Mint] accepted it."  *D & N Bank*, 331 F.3d at 1379.[6]  Under Federal Circuit precedent, this is not enough to establish the Government's intent to contract.

Instead, Portland must show "something more" than documentation of the Mint's regulatory action to demonstrate intent to contract.  For instance, in the *Winstar* cases, the "something more" was commonly found where the parties engaged in arm's length negotiation

---

[6]  The result is the same if Portland delivery of coins is seen as the offer.  In that case, Portland is left alleging that it "simply submitted [coins for examination]," and "the Mint accepted [delivery of] them."

or bargaining concerning the accounting treatment of supervisory goodwill – the critical term in dispute in the *Winstar* cases.  *See D & N Bank*, 331 F.3d at 1381 (discussing the *Winstar* cases in the context of contract formation).  Here, Portland and the Mint did not engage in arms-length bargaining over any aspect of Portland's coin submission; rather, Portland merely submitted coins in accordance with the Mint's regulatory program allowing for examination and possible redemption of such coins.  "Something more" than mere participation in a regulatory program has not been demonstrated and cannot be shown, and Portland has not demonstrated an intent to contract on the part of the Mint based on its regulatory provisions.  *See* Am. Compl. ¶ 89 ("The essential terms of the implied contract were found in the Mint's own regulations[.]").

2. There Is Ambiguity In The Purported Offer And Acceptance And A Lack Of Consideration

i. Portland Has Failed To Allege An Unambiguous Offer And Acceptance

"The inquiry into whether there is a mutual intent to contract overlaps, in part, with the requirement that there be a lack of ambiguity in offer and acceptance, since a plaintiff must offer objective evidence of 'the existence of an offer and a reciprocal acceptance . . . [t]o satisfy its burden to prove . . . mutuality of intent.'"  *Davis Wetlands Bank, LLC v. United States*, 114 Fed. Cl. 113, 121 (2013) (quoting *Anderson*, 344 F.3d at 1353) (additional citations omitted).  As with mutuality of intent to contract, "lack of ambiguity in offer and acceptance. . . must be demonstrated to establish the existence of a contract."  *Petrini v. United States*, 19 Cl. Ct. 41, 45 (1989).  "For a contract to be formed once an offer is made, there must be an acceptance, *i.e.*, a 'manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.'"  *Anderson v. United States*, 344 F.3d at 1355 (quoting Restatement (Second) of Contracts § 50(1) (1981)). "[W]hether an offeree's conduct 'constitutes an acceptance will

depend upon whether the offeror reasonably understands it to be an acceptance and whether it reasonably appears to conclude a contract or whether it leaves matters yet to be concluded.'" *Am. Fed. Bank, FSB v. United States*, 62 Fed. Cl. at 198 (quoting *Williston on Contracts* § 6.10, at 71 (4th ed. 1990)).  "This rule, espoused by the Restatement (Second), operates to protect the offeror who acts reasonably in relation to what he supposes is intended to operate as an acceptance, yet provides the offeror with significant flexibility as the master of his offer."  *Id.* (quoting *Williston on Contracts* § 6.10, at 74).  In practice, "[t]he Federal Circuit requires that the material terms of an agreement must be definite before a contract may be established."  *Am. Capital Corp. v. United States*, 58 Fed. Cl. 398, 408 (2003) (citing *Modern Sys. Techs. Corp. v. United States*, 979 F.2d 200, 202 (Fed. Cir. 1992) ("In the absence of . . . sufficiently definite terms, no contractual obligations arise.").

Portland has not sufficiently alleged an unambiguous offer or acceptance, and, in fact, the purported offer and acceptance between Portland and the Mint lack nearly every material term required to form a binding contract.  Portland appears to allege that it "offered" an "agreed-upon" amount of mutilated coins to the Mint for redemption, after Portland was accepted into the redemption program.  Am. Compl. ¶ 88.  The Mint, for its part, purportedly manifested acceptance by accepting this "agreed-upon" amount of coins for delivery and melting the vast majority of them.  *Id.*  But Portland's allegations regarding these actions elide the fact that Portland's delivery of coins, by the regulation's own terms, was merely a submission for examination for "possible redemption," and there was no ironclad agreement on the day of the melt that the coins had, in fact, met all requirements to be "redeemed" under the terms of the regulation.  Notably missing, also, are other critical terms of the purported contract, including

those sufficient to "provide a basis for determining the existence of a breach and for giving an appropriate remedy."  Restatement (Second) of Contracts § 33(2).

Perhaps to avoid these defects in its pleadings, Portland alleges that the "essential terms of the implied contract were found in the Mint's own regulations."  Am. Compl. ¶ 89.  Further, based on the duties set forth in the governing regulations, Portland alleges that the Mint "accepted the delivery" and "agreed to pay the Portland Mint for the value of the coins that the Mint accepted and redeemed" at the rates specified in 31 C.F.R. § 100.11(d), but failed to do so, thereby allegedly breaching its implied contract with Portland. *See id*. ¶¶ 92-96.  But Portland's reliance upon the regulations to provide all of the material terms of the alleged contractual relationship reaffirms that the relationship was defined and controlled by regulation, not by contract.  Thus, the allegations in the amended complaint do not demonstrate formation of a contract because the right to redeem coinage at a specific rate—supposedly the right running from the contract—was created by the Government through regulation, not agreed upon by the parties following any arm's length negotiation of the terms.  *Bowen v. Public Agencies Opposed To Social Security Entrapment*, 477 U.S. 41, 55 (1986) (*POSSE*) ("The termination clause was not unique to this Agreement; nor was it a term over which the State had any bargaining power or for which the State provided independent consideration.  Rather, the provision simply was part of a regulatory program over which Congress retained authority to amend in the exercise of its power to provide for the general welfare.").

Further, as the Federal Circuit has noted, "a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer."  *Estate of Bogley v. United States*, 514 F.2d 1027, 1032 (Fed. Cir. 1975) (citation omitted).  Here, neither party's actions proceeded beyond a mere

intention to do something on the happening of a particular event, because the regulations provide that coins may be "submitted" for "possible" redemption of coins pursuant to the Government's "examination."  31 C.F.R. § 100.11.  The Mint's redemption program is explicitly for "examination of bent or partial coins for *possible* redemption."  31 C.F.R. § 100.11.  A person or business can apply to deliver coins, but neither the application itself nor the Government's approval of such an application binds either party to any course of action.  Instead, an approved applicant may choose to submit coins, or not.  In addition, if an approved applicant does submit coins, those coins are, under the terms of the regulations, submitted for "examination" and "possible redemption" only.  *Id.*  The Government is under no obligation to actually redeem any coins, and, indeed, the regulations provide a number of situations in which the Government will *not* redeem submitted coins.  *Id.* at (6).  Accordingly, the Mint will only redeem bent or partial coins that are "lawfully held," *id.* at (a), that are "readily and clearly identifiable as to genuineness and denomination, *id.* at (b), and that do not fall into any of the exclusions from redemption under subsection (c)(6).  In other words, if the Mint's "examination" under the regulation determines that the coins are not lawfully held, not genuine, or otherwise not suitable for redemption, then "possible redemption" is denied under the terms of the regulation itself.  *See generally*, *id.*

This process, which is laden with contingencies, is far from the definition of an offer: "an offer is made by the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Anderson v. United States,* 344 F.3d 1343, 1353 (Fed. Cir. 2003) (citation omitted).  Portland's complaint alleges no such definitive action.

In the amended complaint, Portland appears to allege that it "offered" to deliver coins and the Mint "accepted" the offer by scheduling the coins for delivery to Olin Brass on August 1 and 2, 2018, or perhaps by accepting the delivery of the coins.  *See* Compl. ¶ 88.  In either of these scenarios, matters were yet to be concluded.  The U.S. Mint did not "redeem" the coins upon delivery by Portland, or even upon the melting of the coins, because that legal determination to ultimately redeem the coins is not made upon physical acceptance of the coins or even melting of the coins.  Thus, matters were yet to be concluded for redemption of Portland's coins upon delivery and melting, and no contract was formed.

Portland appears to allege acceptance through the Mint's conduct, when the Mint "agreed to accept [delivery of] that agreed-upon number of mutilated coins" from Portland "at Olin Brass on August 1 and 2, 2018."  Am. Compl. ¶ 88.  This court has recognized that the conduct of an offeree can constitute acceptance of an offer to contract.  *See Am. Fed. Bank, FSB v. United States*, 62 Fed. Cl. 185, 198 (2004).  But, the offeror must reasonably understand this conduct to be an acceptance of an offer to contract in order to form the contract.  *Id.*  Whether an offeree's conduct "constitutes an acceptance will depend upon whether the offeror reasonably understands it to be an acceptance and whether it reasonably appears to conclude a contract or whether it leaves matters yet to be concluded."  *Williston on Contracts* § 6.10, at 71.  In the purported "acceptance of a contract" by the Mint through its acceptance of Portland's delivery of coins, matters were yet to be concluded.  As explained above, the physical acceptance of the coins at the foundry could not bind the Government to a contract, because additional matters were to be concluded, including the determination by the U.S. Mint that the coins were legally redeemable.

24

Accordingly, the allegations concerning offer and acceptance and intent to contract are insufficient to demonstrate the formation of a contract, and Portland's contract claim must be dismissed.

ii.    <u>Portland Also Fails To Allege Consideration</u>

Portland's allegations regarding an unambiguous offer and acceptance show a lack of any bargaining power on either side, and, for this same reason, Portland fails to adequately allege the presence of consideration. *NSK Ltd. v. United States*, 115 F.3d 965, 975 (Fed. Cir. 1997) ("Consideration generally requires a bargained-for exchange." (citations omitted)). Portland alleges that it "provided consideration" by delivering coins for possible redemption to the foundry, "as instructed by the Mint." Am. Compl. ¶ 91. Portland implies that this is part of its "bargain" to submit a certain amount of coins for redemption, but, again, its voluntary submittal of coins for examination, and which will be eligible for redemption only *after* the Mint determines that none of the exceptions to redemption apply, does not show true bargaining or leverage. Instead, Portland submitted coins subject to regulatory requirements for examination and a determination of whether such coins can be redeemed, and the Mint is subject to certain prohibitions on redemption that it, also, may not bargain out of. Portland has, again, merely reiterated duties imposed by the regulations, which do not create a contract. *eVideo Owners*, 126 Fed. Cl. at 104.

Nor is there any allegation that the Mint acted outside of any of its legal duties; instead, the Mint's actions, as alleged in the amended complaint, merely reflect the Mint's pre-existing legal duties to determine whether submitted coins may, in fact, be redeemed (*i.e.*, whether they are genuine U.S. coins, lawfully-held, and not subject to the prohibitions on redemption found in section 100.11(c)(6)(i)-(vi)). *See Allen v. United States*, 100 F.3d 133, 134 (Fed. Cir. 1996)

25

("Performance of a pre-existing duty is not consideration."); *Lawndale Restoration Ltd. v. United States*, 95 Fed. Cl. 498, 507 (2010) (same).  Thus, any bargaining in the relationship here—for example, Portland voluntarily submitting some amount of purportedly genuine coinage—is merely illusory and does not form the basis for a valid contract to be formed.  The Mint did not provide any consideration for such submission—merely entry into the examination process—and Portland's submission of purportedly genuine coins is not valid "consideration" because, by regulation, the Mint will examine the coins and determine whether they are redeemable under the regulations, thus obviating any consideration flowing to the Government at the time of submission of the coins.  *Carter v. United States*, 102 Fed. Cl. 61, 66 (2011) ("[F]or a contract to be binding, consideration must flow simultaneously to the government.").

Furthermore, the Court should find there is no consideration for the purported contract because any alleged promise to redeem by the Mint was contingent on a determination that the coins are redeemable.  "Whenever one of the parties to an agreement can terminate without consequence, an enforceable contract does not exist."  *Woll v. United States*, 45 Fed. Cl. 475, 478 (1999).  It is undisputed that the Mint is permitted by law to refuse redemption under certain circumstances, and the Government overall is permitted by law to lawfully seize contraband such as counterfeit coins, both without consequence to the Government.  Thus, because the Mint can terminate the purported agreement without consequence, any purported promises it is alleged to have made would have been illusory, and no valid contract exists.

IV.     Even Assuming The Complaint Sets Forth The Terms Of The Alleged Contract, It Lacks Specific Allegations Concerning The Authority Of A U.S. Mint Employee Or Agent To Enter Into The Contract

Portland's contract claim should be dismissed for the additional, independent reason that the amended complaint still fails to allege that a U.S. Mint employee or agent had the authority

26

to bind the U.S. Mint to a contract.  Portland alleges, based on "communications" (e.g., inquiries about the amount of Portland's coin delivery) and unspecific "actions," but no written instrument, that an "integral part" of Mint employee Anthony Holmes, Jr.'s position was "arranging and contracting for the delivery of mutilated coins." *Id.* ¶ 90.  But these allegations do not even amount to a contention that Mr. Holmes actually formed a contract in this case, merely that he purportedly *could* contract for coin delivery.  Moreover, even if he could contract for delivery, nothing in the allegations indicates that Mr. Holmes had any authority to determine, as a legal matter, whether the delivered coinage could be redeemed under the regulations, or to form a contract for such redemption.

To adequately allege Government authority, Portland "must plead *facts* sufficient to allege that the Government agent had *actual* authority to bind the Government to a contract. Plaintiff's subjective belief is irrelevant."  *Doe v. United States,* 95 Fed. Cl. at 546 (emphasis added) (citing *Harbert/Lummus Agrifuels Project v. United States,* 142 F.3d 1429, 1432 (Fed. Cir. 1998) ("[T]he government is not bound by the acts of its agents beyond the scope of their actual authority.")); *see also Trauma Serv. Grp.,* 104 F .3d at 1325 ("[A]nyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority.").

As indicated above, there are no factual allegations as to what actual or implied authority Mr. Holmes "and other Mint employees" had regarding forming any contracts for coin redemption, *see* Am. Compl. ¶ 90, nor that he or any Mint employee actually formed a contract. Rather, the closest Portland gets is alleging that contracting for delivery of coins was a part of

Mr. Holmes' duties.  *Id.*  Notably, Portland does not allege that Mr. Holmes had the authority, or duty, to authenticate the genuineness of the coins or that he had could contract for ultimate "redemption" of the coins, which is determined under the regulations.  Thus, while the complaint mentions communications from various U.S. Mint employees at various times during the regulatory process, there are no allegations that these employees had the actual or implied authority to contractually bind the U.S. Mint, or, in fact, did so in this instance.  Given this, Portland has failed to sufficiently plead a necessary element of its contract claims.

V.     Portland  Fails To Sufficiently Allege Its Cause Of Action For Breach Of Implied Duty Of Good Faith And Fair Dealing

Portland fails to sufficiently allege its cause of action for breach of implied duty of good faith and fair dealing.  A cause of action based on the implied duty of good faith and fair dealing is simply a specific breach-of-contract claim.  *See Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) ("The covenant of good faith and fair dealing is an implied duty that each party to a contract owes to its contracting partner.").  The duty of good faith and fair dealing is applicable in both private and Government contracts, *id.*, and its existence "depends on the existence of an underlying contractual relationship."  *Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) (internal quotation marks omitted).  Because the existence of the covenant of good faith and fair dealing depends on the existence of an underlying contractual relationship, there is no claim for a breach of this covenant where a valid contract has not yet been formed.  *Id.*  As described above, Portland has failed to sufficiently allege an implied contract; therefore, because there is no underlying contract, this claim must be dismissed.

VI.     Portland's Request For Declaratory Relief Should Be Dismissed

This Court also lacks jurisdiction over Portland's cause of action for declaratory relief. Am. Compl. ¶¶ 109-115.  Portland contends that it seeks a declaration from this Court of its

rights pursuant to the Declaratory Judgment Act, Am. Compl. ¶¶ 110-115, but this Court does

not possess jurisdiction under that statute. *United States v. King*, 395 U.S. 1, 4 (1969).  Cases

seeking relief other than money damages from the Court of Federal Claims have never been

"within [COFC's] jurisdiction," *id.*, and even where money damages are sought, the Tucker Act

does not authorize this Court to order equitable relief except in "strictly limited circumstances."

*Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000) (citing 28 U.S.C. § 1491(b)(2), the

provision granting the Court the power to issue declaratory relief in a bid protest); *Kanemoto v.

Reno*, 41 F.3d 641, 644-45 (Fed. Cir. 1994).  Moreover, although the Court may resolve requests

for non-monetary relief if brought in a properly certified CDA claim, the CDA is inapplicable in

this case because the Mint is exempt from procurement law.  31 U.S.C. § 5136.

In addition, Portland's claim for declaratory relief should be dismissed because it is

duplicative of both its allegations of a regulatory violation (compare Count I, Am Compl. ¶¶ 79-

85, with Am. Compl. ¶¶ 112, 114 and 115a) as well as its breach of contract claim (compare

Count II, Am. Compl. ¶¶ 86-96 with 115b).  *See Parks v. United States*, 15 Cl. Ct. 183, 188

(1988) ("Declaratory relief is unnecessary in this case as it is duplicative of plaintiffs' claim for

monetary damages."); *see also, e.g.*, *United Safeguard Distribs. Ass'n v. Safeguard Bus. Sys.*,

145 F. Supp. 3d 932, 961 (C.D. Cal. 2015) ("[C]ourts have found that a breach of contract claim

resolved all questions regarding contract interpretation, rendering declaratory judgment

'duplicative.'" (internal quotation marks omitted)); *Narvaez v. Wilshire Credit Corp.*, 757 F.

Supp. 2d 621, 636 (N.D. Tex. 2010) ("Plaintiff's request for a declaratory judgment is

duplicative of his breach of contract claim . . . and the Court declines to consider it.").  Like other

redundant claims, such duplicative declaratory judgment claims should be dismissed.  *Fraass

Surgical Mfg. Co. v. United States*, 505 F.2d 707, 709 (Ct. Cl. 1974) ("Plaintiff's Count III is

redundant and is, accordingly, dismissed."); *see also, e.g.*, *MASTR Asset Backed Sec. Trust 2006-HE3 v. WMC Mortg. Corp.*, 843 F. Supp. 2d 996, 1001 (D. Minn. 2012) ("[C]ourts do not hesitate to dismiss declaratory judgment claims when those claims allege duties and obligations under the terms of the contract and asks the court to declare those terms breached." (alterations, citations, and internal quotation marks omitted)).

Finally, to the extent that Portland's allegations amount to contentions that the U.S. Mint is acting unreasonably in following its own regulations or in examining Portland's coin submission, *see* Am. Compl. ¶ 115, those claims, and any attendant requests for injunctive or declaratory relief, are appropriately brought in district court under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, not this Court.  Thus, any claim that the Mint has acted, or is acting, unreasonably in its review of Portland's submission of coins pursuant to its own regulatory program cannot be heard by this Court.  *See Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (noting that the Court of Federal Claims "lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and grant relief pursuant to the Administrative Procedure Act."); *accord Century Exploration New Orleans, LLC v. United States*, 745 F.3d 1168, 1179-80 (Fed. Cir. 2014); *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005).

VII.    The Court Lacks Jurisdiction To Entertain Portland's Cause Of Action For Equitable Estoppel

Portland also fails to sufficiently allege an equitable estoppel claim.  In order to plead a claim for equitable estoppel, plaintiffs must allege "affirmative misconduct" on the part of the Government as well as the four elements of equitable estoppel: (1) the Government must know the true facts; (2) the Government must intend that its conduct be acted on or must so act that the contractor asserting the estoppel has a right to believe it is so intended; (3) the contractor must be

ignorant of the true facts; and (4) the contractor must rely on the Government's conduct to his injury. *JANA, Inc. v. United States*, 936 F.2d 1265, 1270 (Fed. Cir. 1991). Portland has fallen well short of invoking estoppel here, instead merely insisting that the Government should not be able to claim that the coins are counterfeit or otherwise not subject to redemption because it is "beyond dispute" that Portland's shipment contained genuine U.S. coins that were free of "technical anomalies." Am. Compl. ¶ 105. As Portland well knows, the assertion that the coins are genuine and legally redeemable is certainly not "beyond dispute." Am. Compl. ¶¶ 63, 72. The Mint disputes it and has an active investigation into the coins.

Portland has not alleged "affirmative misconduct" on the part of the Government officials who purportedly promised payment after the coin melt nor on the part of the Government officials who have relayed the Government's concerns about the coins. "Affirmative misconduct" is action taken "in bad faith or recklessly, with an intent to injure the plaintiff, or with knowledge of the true facts." *Melrose Assocs., L.P. v. United States*, 45 Fed. Cl. 56, 60-61 (1999), *aff'd*, 4 F. App'x 936 (Fed. Cir. 2001). The purported communications to Portland regarding its coins do not evidence any intent to injure Portland or reflect a knowledge of "the true facts." *See* Am. Compl. ¶ 105. Instead, Portland allegedly received an opinion that payment would be provided, presuming the coins were legally redeemable, and subsequent additional communication on why the payment had not yet been made. None of these Government employees or officials can be said to have made a statement contrary to "the true facts." Moreover, the Mint's acceptance of Portland's coins for examination and "possible redemption" does not evidence an intent on the part of the Government to injure or deceive Portland. Portland may think these Government officials are incorrect in their concerns about the coins and Portland may wish that it had more information, but that does not amount to an allegation of "affirmative

misconduct."  Further, the Mint employees who purportedly promised payment were operating

on the assumption that the coins were redeemable, which was later called into question.  But

there is no evidence that the Mint employees acted in anything other than good faith on the facts

as they believed them to be at the time, nor does Portland allege as such.   In short, the

Government did not mislead Portland into submitting its coins to the redemption program for

possible reimbursement, subject to the regulatory requirements, nor did it falsely assure them

that the coins had been redeemed or met all requirements for redemption.  Portland's failure to

plead this threshold element of equitable estoppel against the Government dooms its claim.

*Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("Determination of jurisdiction

starts with the complaint, which must be well-pleaded in that it must state the necessary elements

of the plaintiff's claim[.]") (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463

U.S. 1, 9-10 (1983)).

Second, Portland has not alleged that the Government knows the "true facts" or what

those true facts would be.  If the true facts are that the coins are genuine and legally redeemable,

any claim that the Government knows these "true facts" is contested because the Mint is actively

investigating the authenticity of Portland's coin submission.  And Portland's reliance on various

other agencies' purported determinations that a small fraction of its coins (which were not

submitted to the Mint) were genuine also does not demonstrate that the Government knows the

"true facts" regarding the authenticity of the coins.  As an initial matter, DHS did not conclude

that the coins it tested, including Portland's coins, were "genuine," as Portland contends, Am.

Compl. ¶¶ 8, 105, but merely that the coins' dates, weights, and composition were consistent

with genuine currency.  *Id.*  But given that the weight and composition of coins are set forth in a

statute, 31 U.S.C. § 5112, and thus easily mimicked, an appearance of consistency with genuine

coins only goes so far.  Moreover, a purported test (on composition only) done five years ago on a small portion of the coins allegedly included in the shipment at issue in this case does not have any bearing on the on the Mint's duty to examine and test coins submitted to the Mint in 2018, nor do those prior tests bear any weight in the Mint's current tests.

The Mint has developed additional tests, in accordance with recommendations from its Office of the Inspector General (OIG), to determine authenticity.  Such tests, to be effective at catching sophisticated counterfeiters who know how to produce coins within the acceptable weight and composition ranges, are obviously kept confidential, because otherwise their efficacy will be diminished.  Portland's implication that two tests that determine "metal content" suffice to show *authenticity*, *see* Am. Compl. ¶ 74, is wholly unsupported.  These tests merely show the weights and compositions of coins can be easily determined.  *See id.* But determining through one of these tests that a coin has the same metal content and composition of genuine U.S. coinage does not mean a coin is genuine.  In other words, Portland's unsupported contentions regarding how easily coins may be tested do not show that its coins are authentic.

Portland has also failed to allege that it "reasonably relied" on the representations of the Government, as they must to invoke the estoppel doctrine against the Government.  *See Henry v. United States*, 870 F.2d 634, 636 (Fed. Cir. 1989) (citations omitted).  Portland's purported reliance on two Mint employees' assurances of payment is not reasonable in the overall regulatory scheme.   The Mint employees who allegedly promised payment do not possess the authority to declare that Portland's submitted coins are ultimately, legally, redeemable (nor does it appear that they purported to do so).  Moreover, "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947) (citations omitted).  Thus,

even if a Mint official made incorrect representations about Portland's coins, those representations cannot defeat the operation of law, which plainly dictates that submissions of coins undergo examination for "possible redemption," and redemption may be prohibited in certain circumstances.

Alternatively, Portland may argue that its equitable estoppel claim is instead based upon an alleged contract with the U.S. Mint to redeem coins. Reasonable reliance, if applied to a contract claim, must be assessed for reasonableness in the context of the overall contractual relationship with the Government and the fact that "[o]ne who purports to contract with the United States assumes the risk that the official with whom he deals is clothed with actual authority to enter the contract alleged." *Urban Data Systems, Inc. v. United States*, 699 F.2d 1147, 1154 (Fed. Cir. 1983). And equitable estoppel against the United States Government can only lie when the Government agent whose actions were relied upon was acting within the scope of the agent's authority. *See McNabb v. United States*, 54 Fed. Cl. 759, 775 (2002). As discussed above, Portland has not sufficiently alleged authority to contract, nor the existence of a contract at all.

Finally, even if Portland contends that it "reasonably relied" on the purported promises Mint employees who told Mr. Youngs to expect payment, any such assurances are inapposite if the coins are not, in fact, legally redeemable. To the extent that Portland contends that it is still owed payment even if the coins were counterfeit or otherwise failed the regulatory requirements for acceptance because two Mint employees allegedly told Portland that the coins were accepted, that contention is incorrect. *See* Am. Compl. ¶ 105a. Portland is not entitled to payments for counterfeit coins (or even the metal that came from melting them) because such payment would be contrary to law and regulation. *See* 18 U.S.C. § 492 (mandating forfeiture of all counterfeit

coins of the United States); *United States v. Simmons*, CV F 96-5948 AWISWS, 2000 WL 33138083, at *3 (E.D. Cal. Dec. 14, 2000) (coins deemed to be counterfeit are per se contraband, their mere possession is illegal, and they should not be returned to the holder); 31 C.F.R. § 100.11(c)(6)(i) (stating that no redemption will be made when a submission demonstrates an attempt to defraud the United States).  Portland's claim for payment for counterfeit coins (or even the constituent metals) is barred.

VIII.   <u>This Court Lacks Jurisdiction Over Portland's Fifth Amendment Takings Claim</u>

In Count VII of the complaint, Portland alleges that the U.S. Mint's "permanent impairment" of its property constitutes a taking without just compensation in violation of the Fifth Amendment.  Portland claims that the U.S. Mint melted the Portland Mint's shipment and used it to manufacture new coin roll without providing the Portland Mint anything of value in exchange.

As an initial matter, a Fifth Amendment taking claim must be based on lawful Government action, but Portland appears to allege that the Mint unlawfully seized Portland's property.  Thus, to the extent that Portland contends that the Government's action was unlawful or unauthorized, the district court, not the Court of Federal Claims, would possess jurisdiction. *See Kam-Almaz v. United States*, 682 F.3d 1364, 1371 (Fed. Cir. 2012); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327 (Fed. Cir. 2006).  "[The] Tucker Act does not create jurisdiction in the Court of Federal Claims for a party contesting the propriety of a seizure."  *Acadia Tech., Inc.*, 458 F.3d at 1331.  This Court may not entertain a collateral challenge to the validity of the Government's actions.  *Schrader v. United States*, 103 Fed. Cl. 92, 98 (2012) (citing *M & J Coal Co. v. United States*, 47 F.3d 1148, 1154 (Fed. Cir. 1995)). "Because a takings claim is separate from a challenge to the lawfulness of the government's conduct," *Acadia Tech.*, 458 F.3d at

1330, complaints "about the wrongfulness of the [Government action] are therefore not properly presented in the context of a takings claim," *id.* at 1331 (quoting *Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1352-53 (Fed. Cir. 2001)).[7]

The only way this court has jurisdiction over this takings claim is if Portland is not disputing the propriety of the seizure itself, but rather seeks to challenge the alleged failure of the Government to compensate Portland for a presumptively lawful seizure.  *See Kam-Almaz*, 682 F.3d at 1371; *see also Crocker*, 37 Fed. Cl. at 195-96 (1997) (citing *Fla. Rock Indus., Inc. v. United States*, 791 F.2d 893, 898 (Fed. Cir. 1986)); *Meschkow v. United States*, 109 Fed. Cl. 637, 644 (2013) (citing *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993)).  But Portland alleges that the Mint is in violation of its own regulations, showing that it believes the Mint's actions to be *un*authorized by law.  *See* Am. Compl. Section F ("The Mint Refuses to Pay the Portland Mint in Violation of its Regulations").  If Portland is alleging that the Mint has acted unlawfully, such allegations do not form the basis for a takings claim under the Fifth Amendment.  *Acadia Tech. Co., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006) ("Because [plaintiff's] takings claim was premised on the allegations that the [Government agency] violated the statute and regulations, the Court of Federal Claims properly dismissed the complaint.") (quoting *Lion Raisins, Inc.*, 416 F.3d at 1369); *see also Meschkow v. United States*, 109 Fed. Cl. 637, 644 (2013) ("[The] Tucker Act does not create jurisdiction in the Court of

---

[7]  For this reason, this Court has recognized that "[t]here is a critical distinction between seeking redress for an alleged unauthorized government action, on the one hand, and just compensation for a taking, on the other."  *Meschkow*, 109 Fed. Cl. at 644.  "The two actions constitute 'two separate wrongs that give rise to two separate causes of action.'"  *Id.* (quoting *Del-Rio Drilling Programs v. United States*, 146 F.3d 1358, 1364 (Fed. Cir. 1998).  "[A] property owner is free either to sue in district court for asserted improprieties committed in the course of the challenged action or to sue for an uncompensated taking in the Court of Federal Claims."  *Id.*

Federal Claims for a party contesting the propriety of" the taking) (quoting *Acadia*, 458 F.3d at 1331).  To the extent that Portland contends that it is entitled to the rely on the representations of the Mint employees who promised payment, even if those representations were unauthorized, the Tucker Act does not provide jurisdiction for Portland to recover damages for unauthorized acts of government officials.  *Fla. Rock Indus.*, 791 F.2d at 898 (Fed. Cir. 1986) (citing *Armijo v. United States*, 663 F.2d 90, 229 Cl. Ct. 34 (1981)).

Moreover, Portland's entire complaint is based upon its alleged contractual right to payment.  But the parties to a contract possess a right to performance or to the payment of whatever damages are due under the law of contracts in the event of non-performance.  *See United States v. Winstar Corp.*, 518 U.S. 839, 868-71, 907-10 (1996) (contracting party is entitled to either performance or damages for non-performance).  As long as the contracting party receives one of those two possibilities, its rights under a contract have been fully satisfied and there can be no taking.  *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 703 n.27 (1949) (recognizing that, where there is a contract remedy, party cannot pursue a takings claim in the Court of Claims).  Therefore, when the Government breaches a contract, a party must seek compensation from the Government for breach of contract rather than alleging a takings claim.  *Piszel v. United States*, 833 F.3d 1366, 1376 (Fed. Cir. 2016).

Here, Portland's takings claim is entirely subsumed by its breach of contract claim because the complaint is premised on the notion that the U.S. Mint wrongfully failed to pay Portland for the coins that it voluntarily submitted pursuant to the redemption program.

We also note that Portland may not receive payment, under any circumstance, if it did not submit genuine coins to the U.S. Mint.  As explained above, all counterfeit coins of the United States must be forfeited to the United States. 18 U.S.C. § 492; *Simmons*, 2000 WL 33138083, at

*3.  Moreover, whether or not Portland knew the coins were counterfeit is immaterial, because the culpability or innocence of the contraband holder does not factor into the analysis.  In *Bennis v. Michigan*, for example, the Supreme Court held that Mrs. Bennis, an innocent wife who had a property interest in a car that was forfeited after her husband used it in the commission of a crime, did not have a claim for a compensable taking.  516 U.S. 442 (1996).  Mrs. Bennis's innocence did not factor into the Court's taking analysis.  Rather, the Court held that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."  *Id*. at 452.

Here, Portland contends that it is "beyond dispute" that Portland's coins shipment "contained genuine U.S. coins that were free of 'technical anomalies,'"[8] but Portland well knows that the U.S. Mint has determined that the coins it submitted are not legally redeemable.  Moreover, the regulations that allow the Mint to refuse redemption for other reasons, including if, for instance, "a submission, or *any portion* of a submission, demonstrates a pattern of intentional mutilation or an attempt to defraud the United States," 31 C.F.R. § 100.11(c)(6)(i) (emphasis added).  And although Portland cites to one provision in the regulation that allows the

_____

[8]  Portland bases its contention about its coins' genuineness on the fact that the Department of Homeland Security previously tested some fraction of Portland's coins ($550 thousand out of the $8.51 million in coinage that Portland allegedly submitted to the U.S. Mint) in a different context, and that DHS concluded this tiny fraction was "indistinguishable from standard currency."  *See, e.g.*, Am. Compl.  ¶¶ 38, 41, 105b.  Paragraphs 74-77 of the amended complaint use circular logic to *imply* that *all* of the coins were genuine because "[e]ither XRF testing or fire assaying *would have* allowed the U.S. Mint to determine that the Portland Mint's shipment contained genuine U.S. Mint coins only.  Those tests *could* have been performed and should have been performed 26 months ago."  None of these statements provide factual support for the allegation that Portland submitted only genuine coins to the U.S. Mint.  Moreover, nothing in the Mint's regulations requires the Mint to use these types of tests to determine genuineness, and the OIG's report, in any event, makes clear the need for new and better testing to determine genuineness of submitted coins.

U.S. Mint to refuse redemption—when "a submission contains any contaminant that could render the coins unsuitable for coinage metal"—and equates that with the U.S. Mint's communications that the coins show "technical anomalies," *see* Am. Compl. ¶¶ 104-105, the two are not necessarily the same and Portland's inference that they are is unwarranted.  Thus, while Portland appears to now allege that it submitted genuine coins to the Mint, that is different from an allegation—or a finding on the part of the Mint—that Portland's submission was *legally redeemable* under the regulations.  Indeed, even genuine coins could be intentionally mutilated, prohibiting their redemption under 31 C.F.R. § 100.11(c)(6)(i).

In any event, Portland's contention that it is owed payment for its allegedly "genuine" coins merely illustrates why the Mint must be allowed to conclude its regulatory process before this Court could even conceivably have a claim—takings or otherwise—to entertain, or whether Portland's claim is more properly brought under the APA in district court.

Accordingly, the takings claim should be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court dismiss plaintiff's complaint for lack of jurisdiction and failure to state a claim.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

/s/ Alison S. Vicks
ALISON S. VICKS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7573
Fax: (202) 307-0972
Alison.S.Vicks@usdoj.gov

December 4, 2020                         *Attorneys for Defendant*