IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE PORTLAND MINT,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | No. 20-518C |
| v.    ) | (Judge Horn) |
| ) | |
| UNITED STATES,    ) | |
| ) | |
| Defendant.    ) | |

DEFENDANT'S STATUS REPORT AND
STATEMENT OF THE ADMINISTRATIVE PROCESS FOR RESOLVING OPEN
ADMINISTRATIVE ISSUES AT THE UNITED STATES MINT

Pursuant to the Court's order dated February 19, 2021, defendant, the United States, respectfully submits this status report. ECF No. 33. The Court directed the parties to "separately file on ECF a brief statement of the administrative process for resolving the open administrative issues at the United States Mint." *Id*. The Court also ordered the parties to file, beginning April 19, 2021, joint status reports regarding "the status of the plaintiff's administrative appeal before the United States Mint." *Id*. This status report includes an overview of the United States Mint's (U.S. Mint) administrative process. *Id*. Although the parties are not required to report on the status of Portland's open administrative appeal before the U.S. Mint until April 19, 2021, defendant includes an update in this status report to apprise the Court of recent events concerning the administrative appeal.

I.      Background On The U.S. Mint's Mutilated Coin Redemption Program

The United States Mint, a bureau of the Department of the Treasury, is the sole manufacturer of legal tender coinage for the United States and is responsible for producing and circulating coinage for the nation to conduct its trade and commerce. The U.S. Mint's Mutilated Coin Redemption Program (Program) is a public service that the U.S. Mint offers under the

authority of Department of the Treasury regulations appearing at 31 C.F.R. part 100, subpart C, promulgated under 31 U.S.C. § 5120, to facilitate commerce by allowing individuals and entities to exchange bent or partial coins (commonly referred to as mutilated coins) for their cash equivalency.  The Program is not mandated by law; the redemption of mutilated coins is a discretionary service offered to the public and participation is voluntary.  The Program is funded by the U.S. Mint's Public Enterprise Fund (PEF), which is fueled by receipts from the U.S. Mint's operations and any borrowing which the Secretary of the Treasury deems necessary to operate the U.S. Mint.  *See* 31 U.S.C. § 5136.

Persons purporting to hold lawfully held bent or partial United States coins can submit them to the Program for examination and possible redemption.  *See* 31 C.F.R. § 100.11(a) & (b). The U.S. Mint receives submissions of coins for examination and possible redemption, takes samples, uses its own subject-matter experts to examine submissions, and determines whether submissions are suitable for redemption pursuant to its regulations governing the Program.  31 C.F.R. §§ 100.11, *et seq*.  Only submissions that consist of lawfully-held bent or partial coins that are readily and clearly identifiable as to genuineness and denomination will be exchanged for lawful currency under the regulations (i.e., will be "redeemed").  *Id.*  The regulations outline the requirements that must be met for submissions to be eligible for redemption, and the U.S. Mint will deny redemption of submissions for any of the reasons set forth in the regulations.  *Id.* at § 100.11(c).  Unacceptable items that the U.S. Mint does not redeem include items such as foreign coins, counterfeit coins, slugs, miscellaneous metal objects, precious coins (silver or gold), and coins that are fused together.

Section 6.8.1 of the U.S. Mint's Standard Operating Procedure Manual (SOP) governs the notification process when the U.S. Mint denies a redemption.  Section 6.8.1 states, in full:

For deficient or rejected applications, mutilated coin lots that are not accepted for redemption, the Analyst prepares the appropriate communication informing the participant of the deficiency or rejected lot. The communication (letter or email) should include the following information:

1. Why the application, mutilated coin shipment, or appeal was deficient or rejected.

2. Directions on shipping the mutilated coin back to them at their expense (if the cause for rejection is that the Participant submitted mutilated coin that was rejected). Participant will pay coin postage expense through the ARC E-bill system.

3. Instructions on if and when Participant can reapply or resubmit mutilated coins.

4. Information on the appeal process (if an appeal has not already been submitted and adjudicated).

5. The Mutilated Coin Program Manager approves the letter and the Analyst sends the notification to the mutilated coin Participant.

Exhibit A (SOP).

If, after examination, the U.S. Mint determines that a submission of coins is redeemable, a check or electronic fund transfer will issue to the submitter redeeming the submission at the amounts set forth in 31 C.F.R. § 100.11(d). The issuance of payment is deemed to be a determination that the submission was suitable for redemption.

For mutilated coin submissions that are not accepted for redemption, the U.S. Mint notifies the participant of the denial and informs the participant of the reason(s) why the shipment was rejected, provides directions on retrieving the rejected shipment (if applicable), instructs the participant on whether and how to resubmit, and provides information on the appeal process.

II.  Administrative Process For Appealing The Denial Of Redemption Of Mutilated Coin Submissions

The U.S. Mint's administrative appeal process for a Mutilated Coin Redemption Program participant to contest a denial of redemption is an informal adjudication that is committed to the agency's discretion and governed by internal agency procedure.  There is no statute committing the process to formal adjudication, and the requirements of 5 U.S.C. §§ 554 and 556-57 do not apply.

After notification and upon appeal, the process mentioned in paragraph 4 of Section 6.8.1 is governed by Section 6.9.3 of the U.S. Mint's SOP.  That section provides a written appeal process by which a participant whose submission has been denied for redemption may appeal the decision and submit additional information or explanation for why the U.S. Mint should modify the denial decision.  That section provides, in full, that:

> 6.9.3.1   If the Participant application to submit mutilated coin is rejected or if the Participant's mutilated coin shipment is rejected following inspection then Participant is informed by the Analyst (see 6.8.1) that they may submit a written appeal of the rejection within 30 days of receipt of the decision. If the Participant has sufficient information or explanation, the rejection decision can be modified.
>
> 6.9.3.2   The Participant submits the appeal including any and all relevant information as to why the rejection should be overturned through written statement to MutilatedCoin@usmint.treas.gov or USPS to the Mutilated Coin Program at the following address:
>
> > United States Mint
> > Attn: Mutilated Coin Redemption Program/Manufacturing Directorate
> > 801 9th Street, N.W.
> > Washington, DC 20220

| | | |
|---|---|---|
| 6.9.4 | | The Analyst notifies the Participant that their appeal has been received and |
| 6.9.5 | | The Associate Director of Manufacturing reviews the Participant's appeal and determines if the reasoning is sufficient to overturn the decision. |
| 6.9.6 | | If the Associate Director modifies the decision, the process continues depending on where the process was stopped. |
| 6.9.7 | | If the Associate Director does not modify the decision, see subsection [6.8.1] [sic]. |

Exhibit A (SOP).

Thus, the U.S. Mint's policy states that if a participant's mutilated coin shipment is rejected following inspection, then the participant is informed of the denial and provided instructions on how to submit a written appeal within 30 days of receipt of the decision. Section 6.8.1. If the participant appeals and provides sufficient information or explanation pursuant to Section 6.9.5, the rejection decision can be modified. The participant submits the appeal, including any and all relevant information as to why the rejection should be overturned, through written statement. The Associate Director of Manufacturing reviews the participant's appeal *de novo* and determines if the reasoning is sufficient to overturn the decision.[1] A letter is sent to the participant informing the participant of the U.S. Mint's decision on their appeal.

The U.S. Mint's process, as governed by its policy, does not provide that discovery requests may be propounded on the U.S. Mint or that the U.S. Mint will provide participants copies of its internal documents. In addition, when a denial is based on an investigative report

---

[1] There is no timeframe set forth for the Associate Director of Manufacturing to make a determination on a participant's appeal because the volume and type of information that the Associate Director may have to review depends on what the participant submits. The U.S. Mint is committed to providing a prompt determination on a participant's appeal after review of all relevant material submitted by the participant.

concluding that the submission contains counterfeit coins, due to the extremely sensitive nature of the information, the U.S. Mint does not provide its investigative material, including its case notes or investigative reports, to the participant as part of its administrative appeal process, because the government investigatory files contain information protected by the law enforcement investigative privilege. Releasing such information would disclose details of the tests the U.S. Mint conducts to ascertain whether the coins are genuine and would provide counterfeiters with details and methods necessary to improve their counterfeiting methods to avoid detection.

Instead, the process provides that the participant may provide additional information, based on information known at the time of its submission, for the U.S. Mint to consider in a subsequent review of the initial denial determination. *See* Exhibit A (Section 6.9.3.2). In other words, the U.S. Mint's process does not provide for the parties to exchange information, conduct discovery-like inquiries based on information exchanged, or participate in a hearing on such evidence. Instead, the process provides the participant the opportunity to submit additional information to persuade, or provide a basis for, the U.S. Mint to reconsider its denial and modify it.

Upon a final determination by the U.S. Mint, a party may seek to challenge the determination in the appropriate Federal court.

III.   Additional Considerations When The U.S. Mint Determines That A Submission Contains Counterfeit Coins

If the U.S. Mint determines that a submission contains counterfeit coins, no redemption can be made and laws other than the U.S. Mint's redemption program regulations are implicated. No redemption can be made by the U.S. Mint because the U.S. Mint is not authorized to redeem counterfeit coins and because such payment would be contrary to law and regulation. *See* 18 U.S.C. § 492 (mandating that all counterfeit coins of the United States be forfeited to the United

States); *United States v. Simmons*, 2000 WL 33138083, at *3 (E.D. Cal. Dec. 14, 2000) (coins deemed to be counterfeit are per se contraband, their mere possession is illegal, and they should not be returned to the holder); 31 C.F.R. § 100.11(c)(6)(i) (stating that no redemption will be made when a submission demonstrates an attempt to defraud the United States).

A denial based on a determination that the coins are counterfeit may be challenged in the appropriate court, depending on the relief sought, as indicated above. The U.S. Mint anticipates that it might be required provide details of its subject-matter expert's testing, analysis, and conclusions *in camera* or in redacted form and under appropriate protective measures in the course of any such action.

    A.    <u>Notice To The Treasury Office Of The Inspector General</u>

The U.S. Mint's SOP reiterates that counterfeit coins will not be redeemed. *See* Exhibit A (excerpt of the U.S. Mint's Standard Operating Procedure for the Mutilated Coin Redemption Program). All suspected criminal activity must be reported to the Treasury Office of the Inspector General (TOIG), by notifying the U.S. Mint's Chief of Protection, who then reports to the TOIG. *Id.* The Mint did so in this case when it reached a preliminary determination that the Portland Mint's retained samples were inconsistent with genuine U.S. coinage. *See* Exhibit B (Mint investigative referral to TOIG, November 6, 2019). After the U.S. Mint's final determination, the matter may be referred to the United States Secret Service or to the Department of Justice.

IV.    <u>The Current Status Of Portland's Appeal Of The Mint's Denial Of Redemption</u>

A brief overview of the current posture of Portland's appeal follows.

On December 30, 2020, at the conclusion of its investigation and verification of its results, the U.S. Mint sent Portland Mint the attached notice denying redemption. Exhibit C

(December 30, 2020 Denial Letter). The notice stated that the redemption of Portland's August 2018 submission was denied pursuant to 31 C.F.R. § 100.11(c)(6)(i)-(iii) and 31 C.F.R. § 100.11(c)(7), and it included non-sensitive details of the sampling and testing methods. *Id.*

In the denial letter, the U.S. Mint provided information on how to appeal the decision. The notice specifically asked Portland to submit "any and all information as to why the determination should be overturned." *Id.*

On January 25, 2021, Portland Mint submitted the attached appeal to the U.S. Mint. Exhibit D (Portland appeal letter, dated January 25, 2021). Portland Mint attached its amended complaint to the letter, but other than that, Portland did not provide additional information regarding its submission. Portland demanded instead "the immediate production of all testing reports and analyses supporting the conclusion that the Portland Mint's shipment was 'counterfeit'." *See id.*

On March 2, 2021, counsel for the U.S. Mint, including the undersigned Department of Justice attorney, and Portland participated in a phone call, at Portland's request. The parties discussed the U.S. Mint's appeal process and about the status of Portland's appeal. During the call, counsel for the U.S. Mint provided an overview of the appeal process as described in Part II herein. Counsel for Portland inquired as to whether the U.S. Mint's process included providing him a copy of its investigative report. Counsel for the U.S. Mint noted that its administrative appeal process does not entail that the U.S. Mint will provide the participant a copy of its internal investigation or any sensitive information. Counsel for the U.S. Mint further explained that the U.S. Mint's process does not contemplate fact-finding, expert discovery, a hearing, or a decision by an adjudicatory officer like an administrative judge. Counsel for the U.S. Mint noted that the administrative appeal process as outlined in the SOP allowed for Portland, upon appeal of the

denial, to submit additional information for the U.S. Mint.  The U.S. Mint then considers any additional information when determining whether to modify or uphold its denial determination.  Counsel for the U.S. Mint invited the Portland Mint to submit any additional evidence for the United States Mint to consider on appeal but counsel for Portland indicated that he would not do so.

Counsel for Portland reiterated that he believed that to challenge the U.S. Mint's determination, he needed to see the internal report and be able to respond to it.  Counsel for Portland expressed that he did not find the U.S. Mint's administrative process as set forth in its SOP to be sufficient to allow him to meaningfully challenge the U.S. Mint's denial of Portland's submission.  Counsel for Portland stated that he was going to propound discovery requests on the U.S. Mint as part of Portland's appeal of the denial and that he expected to include the issue of Portland's discovery requests in his status report to this Court.  That same day, the Portland Mint emailed discovery requests, requesting the U.S. Mint's internal investigatory report as well as information regarding what happened to Portland's August 2018 submission after it was melted.  Exhibit E (Letter requesting Discovery).

On March 4, 2021, the U.S. Mint denied Portland's discovery requests, again explaining the administrative appeal process and explaining that its process does not include discovery.  Exhibit F (Letter from the U.S. Mint).

Pursuant to the conclusion of the administrative process as outlined in its SOP, the U.S. Mint's decision on the appeal will be forthcoming.  Should the U.S. Mint modify its decision on appeal and determine that redemption should be made, Portland would get paid according to the regulatory redemption rates.  Should the U.S. Mint's determination that the submission is not redeemable because it contained counterfeit coins remain unchanged after the administrative

appeal, the counterfeit material is subject to 18 U.S.C. § 492 forfeiture to the United States as contraband *per se*, and Portland may pursue its rights in the appropriate court of law.

                              Respectfully submitted,

                              BRIAN M. BOYNTON
                              Acting Assistant Attorney General

                              ROBERT E. KIRSCHMAN, JR.
                              Director

                              s/ Deborah A. Bynum
                              DEBORAH A. BYNUM
                              Assistant Director

                              s/ Alison S. Vicks
                              ALISON S. VICKS
                              Trial Attorney
                              Commercial Litigation Branch
                              U.S. Department of Justice
                              PO Box 480
                              Ben Franklin Station
                              Washington, DC 20044
                              Tel: (202) 305-7573
                              Fax: (202) 307-0927

March 5, 2021                         *Attorneys for Defendant*