

**CHIESA SHAHINIAN & GIANTOMASI PC**

ONE BOLAND DRIVE
WEST ORANGE, NJ 07052

**csglaw.com**

**LEE VARTAN**
lvartan@csglaw.com
(O) 973.530.2107
(F) 973.530.2307

March 5, 2021

***Via Electronic Filing***
Hon. Marian Blank Horn
Howard T. Markey National Courts Building
717 Madison Place, NW
Washington, DC 20439

> Re:   **The Portland Mint v. United States**
>        **Case No. 1:20-cv-00518-MBH**

Dear Judge Horn:

Please accept this letter on behalf of Plaintiff, The Portland Mint ("TPM"), proposing an administrative appeals process pursuant to the Court's Order of February 19, 2021.

### A. Relevant Background

As Your Honor is aware, nearly 29 months after TPM submitted its coins for redemption, and while Defendant's Motion to Dismiss the complaint was pending, the United States Mint declared that the coins it had already redeemed were "counterfeit." *See* **Exhibit A**. TPM believed that the timing of the Mint's determination was more than coincidental, but so as to preserve its rights, filed an appeal within the allotted 30-day timeframe. *See* **Exhibit B**. TPM's ability to appeal was limited. The Mint's determination letter said almost nothing. All that could be gleaned from the letter was the following:

- TPM delivered 425,095 pounds of mutilated coins to a Mint-designated foundry in August 2018. All but 35 pounds (or .082%) of that shipment were melted by the foundry.

- The 35 pounds consisted of 4,205 coins. Only 203 of those coins (or 4.82%) were tested.

---

**NEW JERSEY**                                              **NEW YORK**

March 5, 2021
Page 2

- Through undisclosed tests performed on the 203 coins, the Mint concluded that "a very high percentage" of the sample was made by a "manufacturer other than the United States Mint." **Exhibit A** at 1-2.  The Mint reached its conclusion even though the sample was consistent with genuine, U.S. coins "in terms of metallurgical composition and weight." *Id.* at 2.

- The Mint then concluded based on undisclosed "[m]ethods of inferential statistics" that TPM's "entire submission was inconsistent with genuine United States coinage and found to be counterfeit." *Id.*

TPM asked for discovery in its appeal letter – specifically, "all testing reports and analyses supporting the conclusion that [TPM's] shipment was 'counterfeit.'" **Exhibit B** at 2.  TPM has received nothing.

In anticipation of complying with the Court's February 19 Order, the parties held a meet and confer on March 2.  TPM renewed its request for two crucial pieces of discovery: (1) the testing reports that supported the Mint's determination letter; and (2) the fate of the 425,060 pounds of coins melted and redeemed by the Mint.  Attorneys for the Mint refused to provide either.  TPM renewed its request in writing that day.  *See* **Exhibit C**.  It was TPM's hope that the parties could agree on an administrative appeals process that included limited (but necessary) discovery so that TPM could meaningfully exercise its appeal rights and show that its coins were genuine.

## B. The Mint's Position

The Mint's position is unchanged from August 2018.  The Mint remains content to deny TPM even the most basic information as to what happened to its property and why.  On March 4, the Mint responded to TPM's discovery requests.  *See* **Exhibit D**.  The Mint declared that the appeals process is an "informal adjudication governed by internal agency procedure."  According to the Mint, the process is "committed to the agency's discretion," and the Mint chooses to exercise its discretion to preclude all discovery.  *See id.* at 1 ("The U.S. Mint's process, as governed by its policy, is an informal adjudication and does not provide that discovery requests may be propounded on the U.S. Mint or that the U.S. Mint will respond to requests from participants for its internal documents.").  The letter made clear that TPM's appeals process is already nearly complete.  TPM had an opportunity to file a written appeal, and a decision on that appeal is "forthcoming."  Nothing more is required according to the Mint.

## C. TPM's Proposed Appeals Process

In light of the Mint's letter, and the Mint's continued and steadfast refusal to provide TPM with any discovery, TPM asks the Court to reconsider its position and

March 5, 2021
Page 3

allow the litigation – and with it, discovery – to proceed.  The Mint's letter makes clear that the Mint's late-breaking determination that TPM's coins were "counterfeit" was pure litigation stratagem.  The letter speaks about the process where a "mutilated coin shipment is rejected following inspection."  *Id*.  There was no rejection here.  TPM's shipment was accepted, melted, and redeemed.  The Mint's own SOP requires payment to TPM.

If the Court remains committed to allowing the administrative appeals process to proceed, TPM asks that the Court order the Mint to exercise its discretion in a manner that allows for a fair process.  Specifically, TPM should be permitted to propound limited discovery to the Mint, and thereafter be allowed to supplement its written appeal based on the discovery provided.  TPM seeks two pieces of information: (1) the test results and any associated report that support the Mint's findings that TPM's coins were "counterfeit"; and (2) information on what was done with those "counterfeit" coins.  TPM cannot meaningfully appeal the Mint's determination if it is not permitted to see and challenge the information on which that determination was based.  Likewise, if TPM's coins were melted and used to manufacture new genuine, U.S. coins, it is hard to understand (TPM would argue impossible to understand) how those coins could have been "counterfeit."  TPM is willing to enter an appropriate protective order with regard to the Mint's testing results and report.  There should also be some deadline for the Mint to issue its final decision so as to prevent even further delay of this matter. "Forthcoming" is not specific enough.

TPM's contemplated process should not be foreign to the Mint.  It is based on the Mint's own regulations, albeit in a different context.  Specifically, 31 C.F.R. §§ 92.11-18 set forth an administrative procedure for civil actions brought against "any person who has misused the words, titles, abbreviations, initials, symbols, emblems, seals, or badges of the United States Mint in violation of 31 U.S.C. 333(a)."  31 C.F.R. § 92.11(a).  These regulations provide for an "examining official" who administers the applicable notices and procedures, and an "assessing official" who makes the final determination as to whether a violation of the underlying statute was committed.  31 C.F.R. §§ 92.12.  An action is initiated by sending an initial notice of assessment to the person alleged to have violated the statute, which must include a specific reference to the provisions violated, a concise statement of facts to support the Mint's conclusions, a notice of the right to submit a written response within 30 days, and a notice of the right to request a copy of "any documents and/or other evidence that the United States Mint compiled and relied on in determining to issue the notice."  31 C.F.R. §§ 92.15.  With regard to privileged materials, the regulation states:

> the assessing official reserves the right to assert privileges available under law and may decline to disclose certain documents and/or other evidence protected by such privileges;

March 5, 2021
Page 4

> however, ***any documents or other evidence withheld from disclosure shall be expunged from the record and shall not be considered by the examining and assessing officials in arriving at their respective recommendations and decisions***.

*Id.* (emphasis added).  If a request for documents is made, the written response is due within 20 days from the date the Mint responds to the request. 31 C.F.R. §§ 92.16(b). The time for a written response may also be extended by 10 days upon a showing of good cause.  *Id.*  Upon receipt of the written response, the examining official will fully consider the record of facts and arguments, excluding any evidence introduced by the Mint after the initial notice unless the respondent has had a chance to review and comment on same, and prepare a report including the entire administrative record and a finding as to each alleged violation.  *See* 31 C.F.R. §§ 92.16(d).  The assessing official, who is not bound by the examining official's findings, then either issues a letter finding no violation, or issues a final notice of assessment setting forth a reference to the provision violated, a statement of facts supporting the conclusion, and the amount of civil penalties imposed.  31 C.F.R. §§ 92.17.

While these regulations do not govern the Mutilated Coin Redemption Program, they do provide a useful framework for what a fair appeals process looks like.  Without discovery and the opportunity to challenge the analysis on which the Mint's determination was based, the appeals process is nothing more than an exercise in further delay.  The Mint may choose to assert privilege and withhold the information requested by TPM, but any information withheld should not be considered in the Mint's final determination.  Once the Mint responds to the discovery requests, TPM should be given an opportunity to submit a more detailed written response.  Without the opportunity for limited discovery, TPM's appeal rights are illusory, and will only serve to waste time in a process that has already extended years too long.

## D. Conclusion

TPM sought to reach an agreed upon appeals process with the Mint.  It asked only for limited discovery.  The Mint refused.  TPM asks the Court to allow civil discovery to proceed or, alternatively, order the Mint to exercise its self-described discretion to provide TPM with the discovery it seeks.  Without intervention from the Court, more months will be wasted, and TPM will continue to be left guessing what happened to its property valued at $8.51 million.

March 5, 2021
Page 5

Respectfully submitted,

/s/ Lee Vartan

Lee Vartan
Attorneys for Plaintiff, The Portland Mint


cc:     Alison S. Vicks, Esq. (via electronic filing and electronic mail)
        Sheila Barnett, Esq. (via electronic mail)
        Apryl Whitaker, Esq. (via electronic mail)

# EXHIBIT A



**DEPARTMENT OF THE TREASURY**
**UNITED STATES MINT**
**WASHINGTON, D.C. 20220**

Adam Youngs
The Portland Mint
2006 16th Ave
Forest Grove, OR 97116-2846
portlandmint@gmail.com
SENT VIA EMAIL AND USPS

Dear Mr. Youngs:

This letter provides an official determination on The Portland Mint's August 2018 submission to the Mutilated Coin Redemption Program (Program).

As background, regulations for the Program establish that bent or partial coins may be submitted for examination for possible redemption. *See* 31 C.F.R. § 100.11. To be redeemed, the bent or partial coins that are submitted must be determined to be, upon examination, "lawfully held" and "readily and clearly identifiable as to genuineness and denomination." *See* 31 C.F.R. § 100.11(a)-(b). With all submissions, the Mint has the right to test samples from the submission to authenticate the material in the submission. 31 C.F.R. § 100.11(c)(4).

Under the Program, no redemption will be made when "[a] submission, or any portion of a submission, demonstrates a pattern of intentional mutilation or an attempt to defraud the United States," "[a] submission appears to be part of, or intended to further, any criminal activity," or a submission "contains a material misrepresentation of fact" under other parts of subsection (c). *See* 31 C.F.R. § 100.11(c)(6)(i)-(iii). If redemption is prohibited for any of these reasons, the submission will not be returned.

In August 2018, The Portland Mint submitted approximately 425,095 pounds of mutilated coin material to the Program for possible redemption. During the delivery of this material at Olin Brass in Illinois, United States Mint employees collected random samples from random containers using a probe, which allowed for a representative cross-section. The gross weight of the retained sample is approximately 35 lbs. The coin sample is predominantly dimes and quarters, which are an equivalent weight per dollar of value. The representative sample from the shipment consists of 4,205 coins (2,038 quarters, 2,073 dimes, and 94 other pieces).[1]

From this larger sample, a statistically representative subsample was randomly generated, assembling 101 representative quarters and 102 representative dimes. These coins represent a carefully selected random sample representing the entire shipment. These coins received the most detailed testing. The balance of the larger coin sample all received individual visual inspection, notation of condition, weight, and issue year and mint mark.

---

[1] For purposes of this notification, the use of the terms "coins," "quarters," and "dimes" does not imply authenticity as legal U.S. tender.

The United States Mint analyzed pieces from this random subsample of the coin shipment using physical analysis, chemical analysis, and electromagnetic testing.  The subsample was compared to coins obtained from circulation and compared against United States Mint specifications for coinage and our production practices.  While many pieces were within the publicly accessible specifications for United States coinage in terms of metallurgical composition and weight, detailed testing and thorough analysis reveal that a very high percentage of coins submitted were actually made by a manufacturer other than the United States Mint.  The United States Mint is the sole manufacturer of legal tender coinage for the United States.  Methods of inferential statistics show that the entire submission was inconsistent with genuine United States coinage and found to be counterfeit.

I have reviewed the test results and find that the testing sufficiently supports a conclusion that the coins you submitted in August 2018 were counterfeit.  Based on this finding, and pursuant to 31 C.F.R. § 100.11(c)(6)(i)-(iii) and 31 C.F.R. § 100.11(c)(7), the United States Mint denies redemption of The Portland Mint's material submitted to the Mutilated Coin Redemption Program in August 2018.  Counterfeit coins are per se contraband, and will not be returned to the holder.  *See* 18 U.S.C. § 492. All rights are reserved for the government to take appropriate legal action.

Should you wish to appeal this denial of redemption, you may submit a written appeal within 30 days of receipt of the decision.  The appeal should include any and all relevant information as to why the decision should be overturned.  The written statement should be sent via email to:

> David Croft
> Associate Director for Manufacturing
> United States Mint
> david.croft@usmint.treas.gov
>
> with a copy to:
>
> John Schorn, Esq.
> Chief Counsel
> United States Mint
> john.schorn@usmint.treas.gov

If no appeal is received within the specified timeframe, the decision becomes final.

Sincerely,

Richard R. Robidoux  Digitally signed by Richard R. Robidoux
Date: 2020.12.30 13:58:23 -05'00'

Richard Robidoux
Division Chief, Engineering
United States Mint

cc: Lee Vartan, Esq. via email at lvartan@csglaw.com

# EXHIBIT B



**CHIESA SHAHINIAN & GIANTOMASI PC**

One Boland Drive
West Orange, NJ 07052

**csglaw.com**

**LEE VARTAN**
lvartan@csglaw.com
(O) 973.530.2107
(F) 973.530.2307

January 25, 2021

***Via Electronic Mail***
David Croft
Associate Director for Manufacturing
United States Mint
801 9ᵗʰ Street, N.W.
Washington, D.C. 20220

   Re: **The Portland Mint**
     **Appeal of the United States Mint's Official Determination**

Dear Mr. Croft:

  The Portland Mint, by and through its counsel Chiesa Shahinian & Giantomasi PC, hereby appeals the United States Mint's official determination denying "redemption of The Portland Mint's material submitted to the Mutilated Coin Redemption Program in August 2018" ("Official Determination").

  <u>First</u>, the Portland Mint rejects the Official Determination as contrary to the Mint's regulations, specifically 31 C.F.R. §100.11(d), as well as the facts.  On August 2, 2018, employees of the Mint represented to Adam Youngs, the owner of the Portland Mint, that the Portland Mint's shipment had been redeemed.  Recent conversations with the Department of Justice have confirmed this.  According to Department of Justice attorneys, all but a small sample of the Portland Mint's shipment was melted at Olin Brass in August 2018.  Repeated requests to the Department of Justice for information on the fate of the melted coins—specifically, whether they were used to manufacture new coin roll—have gone unanswered.  The Official Determination is likewise silent.  There is only one conclusion to be drawn: all but an exceedingly small sample of the Portland Mint's shipment was melted in August 2018 and used to manufacture new coin roll.  Notwithstanding this, and for reasons unknown, the Mint has refused to pay the Portland Mint for the coins it redeemed.  This is a violation of the Mint's regulations.  *See* 31 C.F.R. § 100.11(d) ("The United States Mint *will redeem* bent or partial coins on the basis of their weight and denomination at the following rates…") (emphasis added).

  <u>Second</u>, the Official Determination is bereft of any meaningful information.  It claims that based on a sample of .0082% of the Portland Mint's shipment—only 4.8% of which was actually tested—the Mint was able to conclude (through undisclosed testing) that "a very high percentage" of

---

**NEW JERSEY**                       **NEW YORK**

January 25, 2021
Page 2

the sample was made by a "manufacturer other than the United States Mint." Official Determination at 1-2. The Mint reached this conclusion even though the sample was consistent with genuine, U.S. coins "in terms of metallurgical composition and weight." *Id.* at 2. Then, the Official Determination concludes that based on undisclosed "[m]ethods of inferential statistics … the [Portland Mint's] entire submission was inconsistent with genuine United States coinage and found to be counterfeit." *Id.* The Official Determination reaches this "conclusion" without any explanation as to why, if the Portland Mint's shipment was "counterfeit," the Mint redeemed the shipment 29 months ago and used it to manufacture new coin roll.

        <u>Third</u>, the timing of the Official Determination is, in a word, suspect. The undated Official Determination was received by the Portland Mint on December 30, 2020—months after the Portland Mint sued the United States in the Court of Federal Claims for payment for its August shipment. A copy of the Portland Mint's First Amended Complaint is attached to this letter as **Exhibit A**. Indeed, the Official Determination was sent while the Government's motion to dismiss the Portland Mint's complaint was pending. In its motion to dismiss, the Government claimed for the first time—and without support—that the Portland Mint's shipment was "counterfeit." The Official Determination is a thinly-veiled attempt to bolster the Government's pending motion.

        For the foregoing reasons, the Portland Mint appeals the Official Determination as factually and legally incorrect and demands immediate payment for its August shipment that the Mint redeemed and used to manufacture new coin roll. The Portland Mint is owed approximately $8.51 million. The Portland Mint also demands the immediate production of all testing reports and analyses supporting the conclusion that the Portland Mint's shipment was "counterfeit."

                                              Very truly yours,

                                              <u>/s/ Lee Vartan</u>
                                              Lee Vartan

cc:     John Schorn, Esq. (via email)

# EXHIBIT C



**CHIESA SHAHINIAN & GIANTOMASI PC**

ONE BOLAND DRIVE
WEST ORANGE, NJ 07052

**csglaw.com**

**LEE VARTAN**
lvartan@csglaw.com
(O) 973.530.2107
(F) 973.530.2307

March 2, 2021

***Via Electronic Mail***
Alison S. Vicks, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Washington, D.C. 20044

  **Re: The Portland Mint**

Dear Ms. Vicks:

  Thank you for taking time to speak with us this morning.  As we discussed, and made clear in our appeal letter, the Portland Mint cannot adequately appeal the Mint's determination that its August 2018 mutilated coin shipment was "counterfeit" without basic discovery.  We are mindful that Judge Horn ordered the parties to engage in the administrative appeals process, and that discovery in that process is less robust than civil discovery, but the Government's discovery obligations assuredly extend beyond "none."

  To that end, we again ask for two things.  First, we need the test results and any associated report that supports the conclusions in the December 2020 determination letter.  In that letter, Mr. Robidoux, on behalf of the Mint, wrote: "I have reviewed the test results and find that the testing sufficiently supports a conclusion that the coins [the Portland Mint] submitted in August 2018 were counterfeit."  If the Portland Mint is to have a meaningful opportunity to challenge Mr. Robidoux's conclusions, we need access to the same test results he accessed.  It is a matter of basic fairness.  Second, we are entitled to know the fate of the Portland Mint's coins.  The Portland Mint or its counsel has been asking the same question since August 2018: "Were the supposedly 'counterfeit' coins used to manufacture new coin roll?"  If they were – and in light of the Mint's continued silence, we suspect that they were – the Portland Mint must know.  It is directly relevant to its pending administrative appeal.  The argument is simple.  If the Portland Mint's coins were determined to be "counterfeit" in December 2020, then

**NEW JERSEY**                    **NEW YORK**

4821-5097-5967.v1

March 2, 2021
Page 2

how did the Mint use those "counterfeit" coins in August 2018 to manufacture new coinage?

On our call, the Mint's position was that its administrative appeals process does not allow for discovery, and no discovery would be provided to the Portland Mint. At this point, some 30 months after the Mint redeemed the Portland Mint's coins, with a complaint pending in the Court of Federal Claims, and in light of last week's status conference before the Court, we would ask the Mint to reconsider. If the appeal process is to be at all meaningful, the Portland Mint needs to know what happened to its coins, and must be able to review the "final report regarding [the Mint's] investigation into the authenticity" of those coins, the conclusions from which featured so prominently in the Defendant's Motion to Dismiss. (*See* Dkt.#21, Defendant's Br. at 7, n.5). As we discussed, the Portland Mint is willing to enter into an appropriate protective order.

Please provide the Government's position on the above two requests prior to Friday. The Government's position will inform the administrative appeals process Plaintiff proposes to the Court. As we discussed, it was (and remains) our hope that we can reach an agreed-upon process for Her Honor's review and consideration. Please let us know if you are open to further discussions.

Very truly yours,

/s/ Lee Vartan

Lee Vartan

cc:    Sheila Barnett, Esq. (*via electronic mail)*
       Apryl Whitaker, Esq. (*via electronic mail*)

# EXHIBIT D



**DEPARTMENT OF THE TREASURY**
**UNITED STATES MINT**
**WASHINGTON, D.C. 20220**

March 4, 2021

***Via Electronic Mail***

Lee Vartan, Esq.
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052
lvartan@csglaw.com

**Re: The Portland Mint**

Mr. Vartan,

We are in receipt of your letter dated March 2, 2021, requesting discovery in the United States Mint's administrative appeal process of the denial of the Portland Mint's August 2, 2018 submission to the U.S. Mint's mutilated coin redemption program.

As described in our March 2, 2021 call, the U.S. Mint's administrative appeal process for a Mutilated Coin Redemption Program participant to contest a denial of redemption is an informal adjudication governed by internal agency procedure.

The U.S. Mint's policy is set forth in its Standard Operating Procedure Manual (SOP). The SOP states that if a participant's mutilated coin shipment is rejected following inspection, then the participant is informed of the denial and provided instructions on how to submit a written appeal within 30 days of receipt of the decision. The participant submits the appeal, including any and all relevant information and reasoning as to why the rejection should be overturned, through written statement and attachments, if necessary. The Associate Director of Manufacturing reviews the participant's appeal, including any additional information submitted, *de novo*. The Associate Director of Manufacturing determines if the original denial should be upheld or, if, based on the information and reasoning supplied, the decision should be modified. After a decision is made, a letter is sent to the participant informing the participant of the U.S. Mint's decision on their appeal.

The U.S. Mint's process, as governed by its policy, is an informal adjudication and does not provide that discovery requests may be propounded on the U.S. Mint or that the U.S. Mint will respond to requests from participants for its internal documents. It is not a case of adjudication required by statute after opportunity for an agency hearing contemplated by 5 U.S.C. § 554, and it is therefore not governed by the requirements of 5 U.S.C. §§ 556-57. Instead, the U.S. Mint's process is committed to the agency's discretion. The U.S. Mint has set forth its process for appeals of redemption denials in the agency's SOP, as described above. You

have not articulated a legal basis for your discovery requests at the administrative stage.  The U.S. Mint will respond to such requests in the course of your pending litigation.

To that end, in our March 2, 2021 phone call with you, we invited the Portland Mint to submit any additional evidence it may have regarding the genuineness of its coins or the due diligence the Portland Mint may have undertook to ensure that the $8.5 million in purported United States coins that it purchased from China were genuine.  You declined to submit additional evidence.  If you would like to submit additional information, please let us know and we will consider this additional information with your appeal.  In the meantime, a decision on your appeal is forthcoming.

Sincerely,

/s/ Sheila Barnett

Attorney for the Agency
United States Mint
U.S. Department of the Treasury

cc: Alison Vicks, Esq., Department of Justice

2