No. 20-518C
Senior Judge Horn

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

THE PORTLAND MINT,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

---

BRYAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

DEBORAH A. BYNUM
Assistant Director

ALISON S. VICKS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7573
Alison.S.Vicks@usdoj.gov

July 19, 2021                     Attorneys for Defendant

TABLE OF CONTENTS

ARGUMENT ........................................................................................................ 1

    I.     Portland Is Challenging The Mint's Process For Redemption, Not Stating A
          Claim For Relief In This Court .......................................................... 1

    II.    Portland Fails To Identify A Regulatory Violation, Instead Impermissibly
          Challenging The Process By Which The Mint Redeems Coins Under Its
          Redemption Program ..................................................................... 3

    III.   This Court Lacks Jurisdiction Over Portland's Implied-In Law Contract Claim
          And Portland Fails To Demonstrate That An Implied-In-Fact Contract Was
          Formed .......................................................................................... 8

    IV.   Portland's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing
          Fails To State A Claim Upon Which Relief Can Be Granted And Must Be
          Dismissed ....................................................................................15

    V.    Portland's Takings Claim Should Be Dismissed................................16

CONCLUSION....................................................................................................21

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                      <u>PAGE(S)</u>

*Acadia Tech Inc. v. United States*,
    458 F.3d 1327 (2006)......................................................................................20

*Acceptance Ins. Co. v. United States*,
    583 F.3d 849 (Fed. Cir. 2009) ....................................................................2, 20

*American Federal Bank v. United States*
    62 Fed. Cl. 185 (2004) ...................................................................................9

*Anderson v. United States*,
    764 F. 2d 849 (Fed. Cir. 1985) .....................................................................6

*Armstrong v. United States*,
    364 U.S. 40 (1960)........................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................3

*Bell Atlantic Corp v. Twombly*,
    550 U.S. 544 (2007).......................................................................................14

*Bennis v. Michigan*,
    516 U.S. 442 (1996).......................................................................................20

*Boyle v. United States*,
    200 F.3d 1369 (Fed. Cir. 2000) .....................................................................2

*BP Expl. & Prod. Inc. v. United States*,
    147 Fed. Cl. 623 (2020) ..............................................................................6, 7

*CFS Int'l Capital Corp. v. United States*,
    118 Fed. Cl. 694 (2014) ...............................................................................15

*D & N Bank v. United States*,
    331 F.3d 1374 (Fed. Cir. 2003) ...................................................................8, 9

*Davis Wetlands Bank v. United States*
    114 Fed. Cl. 113 (2013) ...............................................................................10

*Eastport S. S. Corp. v. United States*,
    372 F.2d 1002 (Ct. Cl. 1967)....................................................................5, 6, 7

*eVideo Owners v. United States,*
126 Fed. Cl. 95 (2016) *aff'd*, 680 F. App'x 1004 (Fed. Cir. 2017) .......................................... 8

*FCC v. Florida Power Corp.,*
480 U.S. 245 (1987) ................................................................................................16, 17

*First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal.,*
482 U.S. 304 (1987) ........................................................................................................18

*First Federal Lincoln Bank v. United States,*
58 Fed. Cl. 363 (Fed. Cl. 2003) ........................................................................................ 9

*First Federal Lincoln Bank v. United States,*
60 Fed. Cl. 501 (2004) ...................................................................................................... 9

*Fisher v. United States,*
402 F.3d 1167 (Fed. Cir. 2005) .....................................................................................4, 5

*Greenlee Cty., Ariz. v. United States,*
487 F.3d 871 (Fed. Cir. 2007) .......................................................................................... 6

*Kanemoto v. Reno,*
41 F.3d 641 (Fed. Cir. 1994) ............................................................................................ 4

*Khan v. United States,*
201 F.3d 1375 (Fed. Cir. 2000) .....................................................................................5, 6

*La Van v. United States,*
382 F.3d 1340 (Fed. Cir. 2004) ........................................................................................ 9

*Ling Su Fan v. United States,*
218 U.S. 302 (1910) ........................................................................................................13

*Lion Raisins, Inc. v. United States,*
54 Fed. Cl. 427 (2002) ...................................................................................................... 8

*Lion Raisins, Inc. v. United States,*
416 F.3d 1356 (Fed. Cir. 2005) ................................................................................19, 20

*Love Terminal Partners v. United States,*
889 F.3d 1331 (Fed. Cir. 2018) ......................................................................................16

*Moda Health Plan, Inc. v. United States,*
892 F.3d 1311 (Fed. Cir. 2018) ......................................................................................10

*Maine Cmty. Health Options v. United States,*
    140 S. Ct. 1308 (2020) ................................................................................10

*McCutchen v. United States,*
    145 Fed. Cl. 42, 52 (2019) ............................................................................ 7

*NCLN20, Inc. v. United States,*
    99 Fed. Cl. 734 (2011) ................................................................................11

*New York Airways v. United States*
    369 F.2d 743 (1966) ...............................................................................10, 11

*Prudential Insurance v. United States*
    801 F.2d 1295 (Fed. Cir. 1986) ..................................................................17

*Radium Mines, Inc. v. United States,*
    153 F. Supp. 403 (Ct. Cl. 1957) ............................................................10, 11

*Rith Energy, Inc. v. United States,*
    247 F.3d 1355 (Fed. Cir. 2001) .............................................................18, 19

*Russell v. United States,*
    78 Fed. Cl. 281 (2007) ................................................................................. 2

*SGS-92-X003 v. United States,*
    74 Fed. Cl. 637 (2007) ................................................................................15

*System Fuels, Inc. v. United States,*
    65 Fed. Cl. 163 (2005) ................................................................................16

*Todd Constr., L.P. v. United States,*
    656 F.3d 1306 (Fed. Cir. 2011) ................................................................... 2

*United States v. Simmons,*
    96-*5948 AWISWS*, 2000 WL 33138083 (E.D. Cal. Dec. 14, 2000) ................................ 5, 7, 20

*Villars v. United States,*
    126 Fed. Cl. 626 (2016) .........................................................................13, 14

*Wheeler v. United States,*
    3 Cl. Ct. 686 (1983) ..................................................................................... 4

*XP Vehicles, Inc. v. United States,*
    121 Fed. Cl. 770 (2015) ..............................................................................12

## <u>STATUTES</u>

5 U.S.C. § 706 ................................................................................................................. 7

18 U.S.C. § 492 ................................................................................................. 12, 7, 20

31 U.S.C. § 304 ............................................................................................................... 13

31 U.S.C. § 321(a)(4) ...................................................................................................... 13

31 U.S.C. § 5120 ............................................................................................................. 19

## <u>REGULATIONS</u>

31 C.F.R. § 100.11 ............................................................................................... passim

31 C.F.R. § 100.11(c)(6) ................................................................................................ 12

31 C.F.R. § 100.11(c)(7) ........................................................................................... 13, 14

31 C.F.R. § 100.11(d) ........................................................................................... passim

31 C.F.R. § 100.11(e)(2) ................................................................................................ 11

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Pursuant to Rule 7.2(b) of the Rules of the United States Court of Federal Claims

(RCFC), defendant, the United States, respectfully submits this reply in support of our motion to

dismiss the second amended complaint filed by plaintiff The Portland Mint (Portland).

Defendant's Motion to Dismiss Portland's Amended Complaint (Def. Mot.), ECF No. 55. The

Court should grant our motion because Portland's response fails to adequately address the

defects we identified in its amended complaint. *See* Plaintiff's Response To Defendant's Motion

To Dismiss (Pl. Resp.), July 12, 2021, ECF No. 56.

ARGUMENT

I.      Portland Is Challenging The Mint's Process For Redemption, Not Stating A Claim For
        Relief In This Court

Portland plainly wishes that redemption occurs some other way than that established in

the Mint's regulations. Pl. Resp. at 7. Portland disagrees that the Mint issues payment for a

submission pursuant to its regulations, instead contending that the Mint redeems submissions

based on physical delivery, melting, and potential reuse. *Id.* Portland also contends that the

Mint's final determination denying redemption is unsupported, that the Mint's process took too

long, and that the Mint only issued its determination that Portland's coins were counterfeit as a

litigation strategy to defeat Portland's claims. *Id.* at 3-4. Portland states that the Mint has

established its program to trick people into submitting coins for which the Mint will never pay.

*Id.* at 11. Portland thus paints a bleak picture of the Government, but Portland's complaints

merely confirm that Portland is challenging the redemption process as established by the Mint's

regulations and internal guidance. As explained in our motion, and as is apparent from

Portland's response, the crux of all of Portland's claims is its disagreement with the Mint's

redemption process as set forth in program regulations, 31 C.F.R. § 100.11.

Portland contends that it is not challenging the Mint's process and that we wrongly miscast its complaint as such, Pl. Resp. at 7, but this claim is plainly belied by its response. First, Portland incorrectly describes the process of redemption as based on physical delivery, receipt, and melting of a submission, ignoring the actual process by which the Mint determines that a submission is suitable for redemption as set forth in the regulations. Then, Portland bases all of its claims for relief on its own preferred process. Thus it is clearly challenging the Mint's process by seeking to recast the process more to its liking in order to support its claims for relief. But Portland's response does not overcome the fact that it chose to participate in a regulatory program through which the U.S. Mint examined the coins, determined that Portland's submission contained counterfeit coins, and denied redemption pursuant to its regulations. Denial letter, ECF No. 34-3. This Court does not possess jurisdiction to evaluate the lawfulness of the U.S. Mint's regulations, its internal policy, or the determination that it made pursuant to its regulations. *Russell v. United States*, 78 Fed. Cl. 281, 288 (2007).

Portland appears to contend that the Court does not need to take into account the U.S. Mint's process or its final determination. Instead, all the Court needs to do is credit Portland's allegations. Contrary to Portland's contentions, however, the Court is not required to accept Portland's self-serving allegations as true just because Portland alleged them. First, although the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in favor of the non-movant, *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000), "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." 2A James Wm. Moore & Jo Desha Lucas, Moore's Federal Practice, ¶ 12.07 [2.-5] at 12-84 – 12-85 & n.6 (2d ed. 1996) (collecting cases, interpreting FED. R. CIV. P. 12(b)(6)); *accord Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1316 (Fed. Cir. 2011) ("we are not required to assume that legal conclusions are true"); *Acceptance Ins. Co. v.*

2

*United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) ("a court is not bound to accept as true a legal conclusion couched as a factual allegation") (citation, internal quotation marks omitted).

Thus, while this Court must accept all *factual* allegations as true at this stage in the proceedings, it need not do so for legal conclusions couched as factual allegations, such as Portland's unsupported conclusion that "redemption" is governed by physical delivery, receipt, and melting of a submission, because the facts do not support that conclusion, and the conclusion is further undercut by the regulations governing redemption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). As explained in our motion, the determination of whether coins are redeemed at face value under the U.S. Mint's regulatory program is a legal conclusion reached by the Mint, *after* application of its regulations and conclusion of the *entire* redemption process as set forth in 31 C.F.R. § 100.11. *See* Def. Mot. at 11-17; 31 C.F.R. § 100.11.

II.    **Portland Fails To Identify A Regulatory Violation, Instead Impermissibly Challenging The Process By Which The Mint Redeems Coins Under Its Redemption Program**

The Mint's denial of payment pursuant to its regulations is not a regulatory violation. Portland insists that its first count "alleges a violation of 31 C.F.R. § 100.11," and that it is not challenging the Mint's process. Rather, Portland contends that it has identified a violation of the regulation because it is claiming that the Mint *already redeemed* Portland's coins upon delivery, receipt, and melting of that submission. Pl. Resp. at 6. But this just makes crystal clear that Portland's claim for a violation of 31 C.F.R. § 100.11 is based on its view that the Mint's redemption process is something other than what is set forth in the regulations. In short, Portland is not asking this Court to interpret the regulations, as it claims in its response, *see* Pl. Resp. at 8-9, but to disregard them in favor of Portland's allegations as to how redemption should occur. This Court should decline that invitation: Portland's claims that payment is warranted based on unsupported "conditions" for redemption, such as delivery and melting, is found nowhere in the

text.  The redemption program regulations do not address melting or potential reuses of the melted material in the determination of redemption, rendering unsupported any interpretation that melting or reuse requires payment.

Further, Portland's interpretation fails to take into account the redemption program regulations as a whole and must, therefore, be rejected.  The regulations expressly provide that coins are submitted for "examination and possible redemption," that submissions undergo sampling and examination, that redemption may be denied for a number of reasons under the regulations, and that Portland consented to all of these conditions upon submission.  31 C.F.R. § 100.11.  Neither Portland's failure to acknowledge these provisions, nor its preference that other actions govern the determination of when coins are "redeemed," renders the actual regulatory provisions inapplicable or saves Portland's claim.  Portland's recasting of the Mint's process aside, the Mint's denial of payment pursuant to its regulations is not a "breach of the duties [the regulation] impose[s]."  *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005).

Contrary to Portland's suggestion, we do not suggest that the Court is merely a paymaster, and we agree that, in the context of a money-mandating statute or regulation, the Court may interpret those regulations and determine whether an agency has failed to follow them, thereby breaching those regulations.  *Kanemoto v. Reno*, 41 F.3d 641, 645-46 (Fed. Cir. 1994).  But Portland has not stated a claim for violation of the redemption program regulations, under a proper interpretation of the entire regulation.  *Wheeler v. United States*, 3 Cl. Ct. 686 (1983).  The regulation cited by Portland does not mandate payment for any and all submissions of coins; rather, the regulation sets the rates at which redemption will be made, if, after examination, the Mint determines that the coins are lawfully held, genuine, and not subject to

4

any of the prohibitions on redemption outlined elsewhere in the regulations.  31 C.F.R. § 100.11(d).

Further, the Mint determined, pursuant to its regulations, that Portland's submission was unlawful for redemption.  Denial Letter, ECF No. 34-3.  There's no interpretation of the regulations that entitle Portland to payment for *counterfeit* coins at all.[1]  *United States v. Simmons*, CV F 96-5948 AWISWS, 2000 WL 33138083, at *3 (E.D. Cal. Dec. 14, 2000) (coins deemed to be counterfeit are per se contraband, their mere possession is illegal, and they should not be returned to the holder)).  The regulations do not establish a duty to pay for submissions of coins that are not genuine, so the Mint's failure to pay Portland for non-genuine coins is not a "breach of the duties [the regulation] impose[s]." *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005).  And because the Court may not ignore the Mint's final determination and the regulations also do not establish a duty to pay for submissions of coins that are not genuine or not lawfully-held, Portland has not shown that "the particular provision of law relied upon [31 C.F.R. § 100.11(d)] grants *claimant* [*i.e.*, Portland, specifically], expressly or by implication, a right to be paid a certain sum." *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967) (emphasis added).

If a law does not confer rights on Portland to recover, even if it confers rights as to other classes of plaintiffs, Portland cannot rely on it to establish jurisdiction. *Khan v. United States*, 201 F.3d 1375, 1378 (Fed. Cir. 2000) ("[T]he statutory provisions cited by Dr. Khan[, a retiree,]

---

[1]  Portland contends that Count I does not implicate the Mint's determination that the coins were counterfeit because its suit in this Court predated the final determination.  This argument is specious.  Portland knowingly filed suit before the U.S. Mint's process was complete, after being notified several times by the Mint that its coins were still under examination and that it would be contacted when the examination was complete.  Portland's premature suit does not render the conclusion of the Mint's process meaningless to the Court's analysis of its claims for relief.  Moreover, Portland acknowledges the Mint's determination in its second amended complaint.  2nd Am. Compl. ¶¶ 73-78.

do not apply to retirees. We conclude, therefore, that Dr. Khan's first claim is not based on a money-mandating statute and that the Court of Federal Claims did not err in holding that it lacked jurisdiction over this claim."); *Greenlee Cty., Ariz. v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007) (discussing that when a claim is brought under the Tucker Act and a purported money-mandating source of law, the Court of Federal Claims, in determining whether the law invoked is money-mandating, asks whether the plaintiff is within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established). Portland has not submitted genuine coins that could be redeemed and thus cannot rely on the regulation setting redemption rates as the source of money-mandating law. *Eastport S. S. Corp.*, 372 F.2d at 1007; Denial Letter, ECF No. 34-3.

And the Court cannot disregard or change the Mint's determination simply to place Portland in the category of submissions that may be due payment. *Cf. Anderson v. United States*, 764 F. 2d 849 (Fed. Cir. 1985) (explaining that for an employee to obtain the money by judgment, a statute must exist which mandates the payment of money or which, fairly interpreted, implicitly mandates it. The employee cannot judicially be reappointed, promoted, or reclassified in order to be placed within the reach of such a statute). Thus, Portland's submission of coins deemed unlawful for redemption by the Mint cannot judicially be deemed genuine or deemed to meet the other criteria of the regulations in order to be placed within the redemption rates of the regulations. *Id.*

For the most part, in its response, Portland ignores the implications of the Mint's final determination on its claims before the Court, but in a footnote, Portland cites to *BP Exploration & Production v. United States* for the proposition that this Court is not precluded from reviewing an agency action in certain instances. Pl. Resp. at 7, n.1 (citing *BP Expl. & Prod. Inc. v. United States*, 147 Fed. Cl. 623, 632 (2020)). *BP Exploration* is distinguishable because it was a

straightforward claim for money damages pursuant to an interpretation of the statute, as implemented through the agency's determinations.  *See BP Expl. & Prod. v. United States*, 142 Fed. Cl. 549, 591-92 (2019).  Portland's claim is not for interpretation of the regulations or a statute, but is actually, as demonstrated, for the Court to set aside the Mint's determination that the coins are counterfeit and order payment.  The Mint's determination that the coins are counterfeit, however, is not based on an interpretation of the statute or regulations, and it not a determination that is made pursuant to the redemption program regulations.  Instead, it is a scientific determination separate from the legal conclusion of whether coins are suitable for redemption and the determination of payment under the redemption program regulations, although it is integral to that determination because only genuine coins may be redeemed.  *See* Denial letter, ECF 34-3.  And a determination that the coins are counterfeit means the Mint cannot pay for them.  18 U.S.C. § 492; *Simmons*, 2000 WL 33138083, at *3.  Moreover, the forfeiture of counterfeit coins pursuant to the Mint's determination is an exercise of sovereign police power, over which the Court cannot exercise jurisdiction.  *McCutchen v. United States*, 145 Fed. Cl. 42, 52 (2019) (granting the United States's motion to dismiss because designating bump-stocks as contraband was an exercise of the agency's police power).  Portland has failed to invoke this Court's jurisdiction under a money-mandating source of law, *Eastport S. S. Corp.*, 372 F.2d at 1007, thus precluding this Court's review of the agency's action.[2]  Portland's reliance on *BP Exploration* fails to support its ability to state a claim.

---

[2]  The Court in *BP Exploration* also explains that if review of agency action is warranted under the Court's Tucker Act jurisdiction, the Court "proceed[s] by reviewing the agency's decision under the standards of the Administrative Procedure Act, 5 U.S.C. § 706, *rather than conducting a de novo determination of the facts*." 147 Fed. Cl. at 632 (emphasis added) (internal citations omitted).  Portland conveniently cuts this section off of its quotation of the case.

Portland's argument that the Mint has breached a duty established in the regulations miscasts the regulations and fails to identify a violation of those regulations.   Portland has also failed to show that it is in the category of plaintiffs that could rely on the Mint's regulations to maintain a claim under the Court's Tucker Act jurisdiction.   Accordingly, Portland's claim must be dismissed for lack of jurisdiction, and failure to state a claim.

III.   This Court Lacks Jurisdiction Over Portland's Implied-In Law Contract Claim And Portland Fails To Demonstrate That An Implied-In-Fact Contract Was Formed

Portland denies that its allegations implicate an implied-in-law contract, but Portland has only identified actions on the part of both parties that arise by operation of law, indicating that Portland was participating in a regulatory program, not establishing a contract with the Mint. *See* Pl. Resp. at 14-15; *D & N Bank v. United States*, 331 F.3d 1374, 1380 (Fed. Cir. 2003).

We do not contend that the contract was implied-in-law only because the regulations set the redemption rates, as Portland erroneously recounts. Pl. Resp. at 13.   Rather, our argument was that the entire redemption process, not just the payment rates, is governed by the Mint's regulations, and Portland admits that the "essential terms of the *implied contract* were found in the Mint's own regulations." 2nd Am. Compl. ¶ 92 (emphasis added). "[D]ut[ies] imposed by law do not create a contract within the Tucker Act jurisdiction of the [C]ourt." *eVideo Owners v. United States*, 126 Fed. Cl. 95, 104 (2016), *aff'd*, 680 F. App'x 1004 (Fed. Cir. 2017) (citing *Lion Raisins, Inc. v. United States*, 54 Fed. Cl. 427, 432 (2002)).   Portland must show "something more" than the duties provided for in the regulations to show a contract was formed, which it has failed to do. *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).

Portland claims that it has shown something more under *D & N Bank* and that the Mint had a duty to pay because of its delivery of mutilated coins to the Mint, the Mint's acceptance and melting of that submission, and Portland's communications with Mint employees. The flaw

8

in Portland's application of *D & N Bank* is that none of Portland's allegations demonstrate negotiations or an intent to contract. A handful of emails about scheduling do not evidence the Government's intent to contract but rather merely reflect scheduling a request for examination of bent or partial coins for possible redemption under the regulations. And Portland's reliance on similar cases, such as *First Federal Lincoln Bank* and *American Federal Bank*, is equally unhelpful to it. In *First Federal Lincoln Bank v. United States*, the appeals court found "extensive negotiations" between the parties, specifically Lincoln's proposal that was rejected by the Government, a Government counter-proposal, and a compromise and bargain struck after "much oral and written communication." 60 Fed. Cl. 501, 505 (2004); *see also First Federal Lincoln Bank v. United States*, 58 Fed. Cl. 363, 367-8 (Fed. Cl. 2003). Likewise in *American Federal Bank FSB v. United States*, the court found a written proposal, counter-proposal, and compromise. 62 Fed. Cl. 185, 200 (2004). Unlike in either of these cases, Portland cannot point toward any similar proposals, counterproposals, bargains or compromises.

In its response, Portland contends that it deserves discovery in order to demonstrate the "something more," relying on *La Van v. United States*, 382 F.3d 1340, 1346 (Fed. Cir. 2004). Portland also relies on a number of cases that it contends support the formation of implied-in-fact contracts "under similar circumstances" as here. Pl. Resp. at 19-20. None of these cases support Portland's position. In *La Van*, the Court found that the Government's written board resolutions specifically approved of the plaintiffs' plan, and, in particular, the Court found that the Government's resolution explicitly acknowledged that the Government was engaged in negotiation about the terms. *La Van*, 382 F.3d at 1346-7. In contrast, no negotiations over terms are alleged in this case, and the only written materials referenced by Portland are a handful of emails scheduling delivery, Portland's application and deficiency letter (which it no longer

claims as the basis for its purported contract), and the Mint's Redemption Program regulations, including the redemption rates set forth in 31 C.F.R. § 100.11(d).

Portland's reliance on *New York Airways*, *Radium Mines*, and *Davis Wetlands* is also inapposite to the facts of this case. In *New York Airways v. United States*, intent to form a contract was found where Congress, by statute, specifically indicated the contractual nature of the transaction at issue. 369 F.2d 743, 752 (1966). No such language is found in the regulations here. Nor do the regulations provide that the Government will contract to *purchase* coins upon certain conditions, as it did with uranium ore in *Radium Mines, Inc. v. United States*, 153 F. Supp. 403, 404-405 (Ct. Cl. 1957). In *Davis Wetlands v. United States*, the court found that an express (not an implied-in-fact) contract was formed when the parties entered into a written, signed, final agreement constituting 19 pages, evidencing a detailed and mutual agreement. 114 Fed. Cl. 113, 120 (2013). And the portion of the opinion to which Portland cites from *Molina Healthcare of California*, that "absent some express declaration of an intent to contract, Congress's creation of a program in which it promises to pay a sum of money in exchange for some specified performance is evidence of an intent to contract[,]" was overturned by the Federal Circuit in *Moda Health*. *Moda Health Plan, Inc. v. United States*, 892 F.3d 1311, 1330 (Fed. Cir. 2018), *rev'd and remanded on other grounds sub nom. Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308 (2020).[3]

---

[3] *Moda Health* also provides a helpful discussion of *Radium Mines*, illustrating the difference between regulations that evidence intent to contract and the regulations at issue here: "The overall scheme of the risk corridors program lacks the trappings of a contractual arrangement that drove the result in *Radium Mines*. There, the government made a 'guarantee,' it invited uranium dealers to make an 'offer,' and it promised to 'offer a form of contract' setting forth 'terms of acceptance.'" *Moda Health*, 892 F.3d at 1330 (citing *Radium Mines*, 153 F. Supp at 404-05).

These cases thus do not support Portland's position that it needs discovery to demonstrate that a contract was formed. Instead, these cases highlight the difference between regulatory language that intends to contract, like in *Radium Mines* or *New York Airways*, and regulatory language that does not, like the redemption program regulations. Even if the Court were to interpret the regulatory language as an offer to contract, as in *New York Airways*, the offer would be to pay redemption rates for submissions that meet certain conditions—submissions that consist of genuine, lawfully-held mutilated coins that are not subject to one of the prohibitions on redemption. *See* 31 C.F.R. § 100.11. Consideration would be the receipt of lawfully-held, genuine coins, as determined by the Mint upon examination. *See id.* This plainly did not happen here, as shown by the Mint's final determination, so there was no consideration. Nor could there said to be an adequate "meeting of the minds"—the Mint did not agree to accept and redeem counterfeit coins. Indeed, it did not agree to "redeem" anything at all, but merely to accept coins for "examination and possible redemption."[4] 31 C.F.R. § 100.11.

In addition to failing to show that the Mint's regulations indicate an intent to contract, Portland has otherwise failed to show that an implied-in-fact contract was formed. Portland contends that it adequately alleged facts to underlie its implied-in-fact contract claim, and that it thus survives our motion to dismiss. As demonstrated, however, there was no consideration or meeting of the minds, nor a mutual intent to contract. Portland's "offer" to deliver a specific

---

[4] Portland references an Office of Inspector General (OIG) audit report on the Mint's redemption program, noting that the report refers to coins "redeemed" in August 2018. Pl. Resp. at 12 n.2. Contrary to Portland's suggestion, the bullet point referenced in the OIG report merely shows that OIG officials witnessed part of the Mint's redemption process. The report is hearsay and is not an admission that Portland's coins were redeemed. *NCLN20, Inc. v. United States*, 99 Fed. Cl. 734, 751 (2011) ("[T]he Government's admission of the authenticity of the IG Report was not an admission as to either the factual or legal conclusions contained therein"). Moreover, Portland's submission was determined to be unlawful for redemption after in-depth testing of the samples retained from the melt by the official with the authority to do so at the Mint. Denial letter, ECF No. 34-3.

number of coins for redemption, and the Mint "agree[ing] to accept" that specific number of coins for delivery, Pl. Resp. at 26, show that the Mint and Portland communicated about the size of Portland's delivery to the Mint's regulatory program rather than an arms-length, negotiated transaction or "objective" evidence of an intent to contract. Further, the Mint instructed Portland to submit its coins at an appropriate facility, again pursuant to the regulations. 31 C.F.R. § 100.11(e)(2). Mere solicitations, invitations, or instructions from the Government are not offers to contract that can bind the Government. *See XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 785 (2015). Moreover, there could be no intent to contract to redeem counterfeit coins, which are contraband *per se* and forfeited. 18 U.S.C. § 492.

Portland also contends that it alleged an unambiguous offer and acceptance when it alleged that Portland "offered to deliver" a specific number of coins and the Mint "accepted the delivery," redeemed the coins, and agreed to pay Portland. Pl. Resp. at 27. This formulation again evidences Portland's total disregard for the regulatory scheme that controls Portland's submission, the fact that its submission was delivered for examination, and the Mint's legal determination not to redeem Portland's submission. Portland counters by arguing that the Court must take its allegations at face value, notwithstanding that they misrepresent the process. Portland is incorrect. The Court must examine allegations to see if they are supported by adequate facts and the law. Portland's are not.

Portland also incorrectly contends, contrary to the plain language of the regulations, that a contract was formed because the Mint did not reject Portland's delivery. Pl. Resp. at 12-13 n.2. The regulations do not provide that the Mint's only option if it does not redeem coins is to deny delivery of a submission. In fact, the regulations expressly provide that the Mint may, after receiving and examining a submission, keep or return the submission if it is non-redeemable,

depending on the reason for non-redemption.   31 C.F.R. § 100.11(c)(6).   And counterfeit coins are non-returnable by operation of law.   18 U.S.C. § 492.

In any event, our motion did not fail to take these allegations at face value; rather, we pointed out that the entire redemption program is governed by regulations, and that, as a matter of law, Portland cannot "offer to *redeem*" coins because the determination of whether coins are redeemable is a legal conclusion reached by the Mint.   Def. Mot. at 11-12.   Only the Mint can make the determination that mutilated coins submitted to its redemption program are valid legal United States tender and thus redeemable.   31 C.F.R. § 100.11(c)(7).   Indeed, only the Mint—not Portland or any court—has been vested with the exercise of the Government's sovereign power to manufacture legal tender coinage, and the Mint determined that it did not manufacture the coins Portland submitted.   *See* Art. I, sec. 8, U.S. Const.; 31 U.S.C. §§ 321(a)(4), 304; *Ling Su Fan v. United States*, 218 U.S. 302, 310 (1910) ("The power to 'coin money and regulate the value thereof, and of foreign coin,' is a prerogative of sovereignty and a power exclusively vested in the Congress of the United States.").

Portland also contends that it adequately alleged that Anthony Holmes Jr. had "implied actual authority" to contract to redeem coins and that we are seeking to impose a heightened pleading standard.   We are not seeking to impose a heightened pleading standard, as Portland contends, but rather merely pointing out the facial deficiencies of Portland's allegations regarding authority, which range from failure to allege that Mr. Holmes had the authority (implied or otherwise) to contract to redeem coins, rather than just receive them, *see* 2nd Am. Compl. ¶ 93, to failure to allege anything more than apparent authority.   Nor does Portland deserve to proceed to discovery on the issue, and its heavy reliance on *Sommers Oil* in support of its contention that it deserves discovery is entirely misplaced.   In *Villars v. United States*, 126 Fed. Cl. 626 (2016), the applicability of *Sommers Oil* in this same context was discussed at

length, concluding that a reliance on *Sommers Oil* is misplaced given that its standard of review has been superseded. The *Villars* court concluded that "within the context of a contract claim involving the United States[], that an averment in a complaint that government agents were 'authorized representatives of the United States' alone is not sufficient for the Court to reasonably infer that the government agents possessed authority to bind the United States in a contract." *Id.* at 636. The *Villars* court found that the plaintiff must demonstrate how the Government agent could have possessed implied actual authority to enter into a contract, rather than simply alleging mere conclusions. *Id.*

As explained in *Villars*, Portland must allege facts to show how Mr. Holmes could have possessed implied actual authority to enter into a contract, not merely offer conclusory allegations that he did. *Id.* Allegations that Mr. Holmes communicated to Portland where it should deliver its submission, was present during the delivery, and informed Portland of the average timetable for payment, Pl. Resp. at 22, fall short of demonstrating that contracting—or even issuing payments—was integral to Mr. Holmes's position. J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982) ("Authority to bind the [g]overnment is generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee."). While these allegations may be consistent with contracting in some instances, they are not "allegations plausibly suggesting" that contracting is an *integral* part of Mr. Holmes's position, thus failing to show entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Portland must do more than simply allege mere legal conclusions regarding Mr. Holmes's authority. *Villars*, 126 Fed. Cl. at 636; *Twombly*, 550 U.S. at 564.

Portland also contends that it should not have to rely on laws and regulations regarding Mr. Holmes's authority, and that it needs discovery on that issue, but Portland simultaneously recognizes that the regulations explicitly vest *the Director of the Mint* with authority "with

respect to all aspects of redemptions of bent or partial coin submissions." *See* 31 C.F.R. § 100.11(c)(7). This shows both that authority for the redemption program is established and knowable through the regulations, and that "the relevant agency's regulations . . . grant the authority to other agency employees." *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2007).

And while Portland rightly recounts that the authority of the Director of the Mint can be designated under the regulation to someone else, Portland has failed to allege that the Director so designated Mr. Holmes, and the Mint's final determination would defeat any such allegation, were it to be made. The denial letter was issued by Richard Robidoux, not Mr. Holmes, and the denial of appeal was issued by David Croft, not Mr. Holmes.

Portland's allegations fail as a matter of law and must be dismissed.

IV.     **Portland's Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Fails To State A Claim Upon Which Relief Can Be Granted And Must Be Dismissed**

Portland's response confirms that Portland's claim for breach of the implied covenant of good faith and fair dealing is based on its claim that the Government has failed to pay Portland for its coin submission, the same allegations that underlie its breach of contract claim. Pl. Resp. at 30. Portland's claim for breach of the implied covenant is thus duplicative of its claim for breach of contract and should be dismissed. *CFS Int'l Capital Corp. v. United States*, 118 Fed. Cl. 694, 701 (2014) ("In order to avoid redundant claims, a plaintiff may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim.") (internal quotation marks omitted); *see id.* ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant.") (citation omitted).

15

V.    Portland's Takings Claim Should Be Dismissed

Portland does not have a valid takings claim.  As an initial matter, Portland voluntarily

submitted its mutilated coins to the Mint for examination and possible redemption.  Portland

contends that this is incorrect, and that the taking occurred not on delivery but upon melting and

purported reuse.  Pl. Resp. at 31.  But Portland's response misses the mark: the only reason the

Mint had possession of Portland's submission at all was because Portland willingly delivered it

to the Mint, for participation in its regulatory program.  *See, e.g.*, 2nd Am. Compl. ¶ 107.  And

Portland's protestations notwithstanding, *Love Terminal Partners* stands for the proposition that

a voluntary transfer of property is not a taking.  889 F.3d 1331, 1348-49 (Fed. Cir. 2018).  In

*Love Terminal Partners v. United States*, the Federal Circuit held that if the plaintiff's property

was ultimately acquired through negotiation, that could "could not constitute a taking because

any property transfer *would be voluntary*[,]" full stop, saying nothing about "just compensation"

in that section of its opinion.  *Id*.  The Court of Appeals went on to state that a condemnation

action by the City of Dallas would require just compensation, so that would also not constitute a

Fifth Amendment taking.  *Id*.  Portland conflates these two holdings, stating that both found there

was no taking because there was just compensation, but this is incorrect.  Pl. Resp. at 31-32.  The

*voluntariness* of the transfer is what defeats the takings claim, not the element of compensation.

*Love Terminal Partners*, 889 F.3d at 1348-49;  *accord FCC v. Florida Power Corp.*, 480 U.S.

245, 252 (1987) ("This element of required acquiescence is at the heart of the concept of

occupation.").

Portland relies upon *System Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 172 (2005) to

sustain its claims, but that reliance is misplaced.  Pl. Resp. at 32.  In *System Fuels*, the property

alleged to be taken was contract rights, based upon a contract that was entered into voluntarily.

65 Fed. Cl. at 172 ("The first [taking claim] is that the government took the contractual right to

disposal under the Standard Contract, and the second is that the government, through a categorical or regulatory taking, forced Entergy Arkansas to use its premises to store SNF for which the government is responsible.").  The *taking* of the contract rights, however, would not be voluntary, even if the rights were created voluntarily.  *Id.*  Thus the takings claim was adequately stated, and "required acquiescence" was at the heart of both claims.  *Id.*; *see also Florida Power Corp.*, 480 U.S. at 252.  *Systems Fuels* is additionally inapposite because Portland is alleging that the Government took its physical property, not its contract rights.  Pl. Resp. at 32 (reiterating that its allegations are that the Government physically took [Portland's] coins).

Portland's citation to dicta in *Prudential Insurance v. United States* fares no better; there, the Court simply speculated that the plaintiff might have a takings claim if its contract claims failed.  *Id.*  *Prudential Insurance* does not stand for the proposition that a taking results from voluntary transfers of property, as through a lease, but, instead, the Court, in dicta, noted that at the expiration of a lease, the Government could be seen to be "occupying" the land because the voluntary arrangement no longer governed.  801 F.2d 1295, 1300 n.13 (Fed. Cir. 1986).

Moreover, as we explained in our motion, Portland's contention that the Government has acted wrongfully or unlawfully by not paying for coins that the Government determined were counterfeit cannot form the basis for a takings claim in this Court, for a number of reasons.  Def. Mot. at 32-36.  Portland makes two arguments in response.  First, it contends that it can allege that the agency acted wrongfully and still maintain its taking claim, relying on *Del-Rio Drilling* for support.  Pl. Resp. at 33.  Second, it contends that the cases we cited to support dismissal, such as *Lion Raisins*, are inapposite because they discuss regulatory takings, while Portland maintains that it is asserting a physical taking.  *Id.* at 34.  In support of the first argument, Portland also makes the unsurprising observation that a takings claim always involves a charge of wrongful Government conduct: the plaintiff thinks the Government wrongfully failed to pay

"just compensation" in exchange for its property.  But as the Supreme Court has made clear, "the [Fifth] Amendment . . . is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of *otherwise proper interference amounting to a taking*." *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal.*, 482 U.S. 304, 315 (1987) (emphasis added).  "Thus, government action that works a taking of property rights necessarily implicates the 'constitutional obligation to pay just compensation.'" *Id.* (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

Portland contends that its challenge to the Mint's program in the context of its takings claim is valid, relying on *Del-Rio Drilling*.  Pl. Resp. at 33.  This is incorrect.  In response to this same argument, the Federal Circuit clarified in *Rith Energy* that this position "reads too much into *Del-Rio*":

> [T]o the extent that the plaintiff claims it is entitled to prevail *because* the agency acted in violation of statute or regulation, *Del-Rio* does not give the plaintiff a right to litigate that issue in a takings action[.]

*Id.* at 1366.  Portland's takings claim is premised on its view that the Mint owes it payment for its submission pursuant to 31 C.F.R. § 100.11(d) because the Mint accepted Portland's coins into its regulatory program, and that the Mint has, therefore, violated its regulations by failing to pay.  This contention is flawed because it erroneously locates the relevant Government action in delivery, melting, or potential reuse of Portland's submission, ignoring both the Mint's actual process and relevant Government action—the final determination.  Portland's reliance on *Del-Rio* is thus flawed because of Portland's erroneous casting of the relevant Government action, and because Portland challenges the Government action when, instead, it is "required to litigate its takings claim on the assumption that the administrative action was both authorized and lawful."  *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1366 (Fed. Cir. 2001).

Portland has not assumed that the Mint's action was authorized and lawful, as evidenced by its characterization of the Mint's determination as unsupported and as litigation strategy. Moreover, Portland alleges that the Government denied it payment for its property pursuant to regulatory breach, which cannot sustain a takings claim. *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1369 (Fed. Cir. 2005) (quoting *Rith Energy*, 247 F.3d at 1366). Portland has alleged that it is owed compensation pursuant to 31 C.F.R. § 100.11(d), and that the Mint's failure to pay is a violation of that provision. Regardless of whether the Mint rightly or wrongly denied payment, Portland's claim is that it is "entitled to prevail [only] *because* the agency acted in violation of statute or regulation" by denying payment. Portland takings claim fails. *Lion Raisins*, 416 F.3d at 1369.

Portland confuses this point by contending that the relevant Government action is the Government's possession of its coins, from which the right to compensation flows. Pl. Resp. 30-31. Portland misunderstands that the right to compensation from the Mint for mutilated coins arises not by virtue of the existence of mutilated coins but is created by regulation and through operation of the Mint's redemption program. Without such a program, a holder of genuine, mutilated coins may keep them or attempt to use them in the economy, but that holder has no right to payment from the Mint in exchange for submissions of those coins.[5] And, while Portland points to the Secretary's statutory obligation to melt worn or obsolete coins in 31 U.S.C. § 5120, that statute contains no obligation to provide payment. Thus, Portland's right to payment from the Mint for bulk submissions of mutilated coins arises only by operation of the Mint's

---

[5] Once the Mint has created the scheme, however, a holder of genuine, mutilated coins that meet the criteria for redemption obviously has a right to payment, but pursuant to the Mint's determination regarding Portland's submission, that does not apply here. The point, moreover, is that the right to payment from the Mint for mutilated coins is created by regulatory scheme, not by the fact that mutilated coins may be genuine currency.

regulatory scheme, not by its possession of physical coins, and, more importantly, Portland's claim that the Mint is liable is based on its contention that the Mint *violated* that scheme. *Lion Raisins*' holding that "a claim premised on a regulatory violation does not state a claim for a taking" applies in full force to defeat Portland's ability to state valid takings claim in this Court. *Lion Raisins*, 416 F.3d at 1369; *Acadia Tech. Inc. v. Untied States*, 458 F.3d 1327, 1331 (2006) ("Because [plaintiff's] takings claim was premised on the allegations that the [Government agency] violated the statute and regulations, the Court of Federal Claims properly dismissed the complaint.") (quoting *Lion Raisins, Inc.*, 416 F.3d at 1369).

Of course, as explained, if Portland seeks to base its takings claim on the Mint's final determination, that claim fails as well. The Mint denied payment because it determined that Portland's submission contained counterfeit coins. Portland does not have a property interest in counterfeit coins, *Simmons*, 2000 WL 33138083, at *3, nor can it maintain a takings claim for contraband. 18 U.S.C. § 492; *Simmons*, 2000 WL 33138083, at *3; *Acadia Tech., Inc.*, 458 F.3d at 1331 (citing *Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996)). Portland thus does not have a cognizable property interest, and its takings claim should be dismissed. *Acceptance Insurance Cos., Inc. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009) (in analyzing a taking claim, the Court must first determine whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking).

At base, in order to provide Portland the relief that it seeks under its taking theory, this Court would have to ignore the Mint's counterfeit determination and declare that Portland's coin submission consisted of genuine, U.S. coins that are suitable for redemption. It does not have jurisdiction to do so, however. Portland may not receive payment, under a takings theory or otherwise, for the counterfeit coins it submitted to the U.S. Mint.

CONCLUSION

For these reasons and the reasons in our motion, we respectfully request that the Court dismiss plaintiff's complaint for lack of jurisdiction and failure to state a claim.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARTIN F. HOCKEY, JR.
Acting Director

/s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

/s/ Alison S. Vicks
ALISON S. VICKS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7573
Fax: (202) 307-0972
Alison.S.Vicks@usdoj.gov

July 19, 2021                    *Attorneys for Defendant*

21

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on this 19th day of July, 2021, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT" was filed electronically.

I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that the parties may access this filing through the Court's system.

In addition, a copy of the foregoing was sent to the plaintiff's counsel, Lee Vartan, by email at lvartan@csglaw.com.

<u>s/ Alison S. Vicks</u>
ALISON S. VICKS
Trial Attorney
